**STATE of Iowa, Appellee,**

v.

**Edward Ochoa TEJEDA, Appellant.**

No. 03–0782.

Supreme Court of Iowa.

April 7, 2004.

Linda Del Gallo, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, John P. Sarcone, County Attorney, and Michael T. Hunter, Assistant County Attorney, for appellee.

STREIT, Justice.

A jury convicted Edward Tejeda of willful injury for clobbering a young man in the head with a baseball bat. Prior to trial, Tejeda sent the court two letters alleging a breakdown in communication with his attorney. Tejeda claims the district court should have inquired into this potential problem. We agree, and hold trial courts have a duty to inquire into alleged breakdowns in communication between defendants and their attorneys. Because the record before us is inadequate for resolution on direct appeal, however, we preserve for postconviction proceedings the issue of whether this breakdown amounted to a denial of Tejeda's Sixth Amendment right to counsel.

Tejeda also challenges the district court's refusal to admit hearsay evidence of another man's confession to the crime, and claims his trial counsel was ineffective for failing to object to a jury instruction which lacked evidentiary support in the record. We reject these two claims, and affirm.

## I. Facts and Prior Proceedings

Late one night in June 2002, a large number of young people assembled on West Riverside Drive in Des Moines. West Riverside Drive is, by all accounts, a popular place for youth to cruise, socialize, play music, and drink alcohol. Among the congregation gathered at West Riverside Drive on this summer night were Edward Tejeda and his ex-roommate, Lisa Woods. Although Tejeda and Woods arrived separately, trouble soon ensued. Before sunrise, another young man, Matthew Heman, would nearly lose his life.

According to the prosecution's witnesses, Tejeda, wielding a baseball bat and accompanied by several friends, confronted Woods about some of his personal property, which she had taken from their former residence. Tejeda argued with Woods about the property. One of Tejeda's female comrades then whacked Woods over the head with a forty-ounce beer bottle. As a crowd gathered, a stunned Woods looked up and saw Tejeda and another male standing before her, each holding baseball bats. Woods cried out for help.

Woods' friend, Matthew Heman, came to her aid. As Heman arrived, Tejeda raised his bat. Heman stepped in front of Woods, and Tejeda swung the bat, hitting Heman on the right side of the head. Heman fell to the ground, his skull fractured and bleeding. Tejeda and his companions fled.

Doctors were able to save Heman's life. He spent ten days in the hospital recovering from his injuries, which required several metal plates and stitches. Despite continued therapy, Heman has suffered memory problems, personality changes, and difficulty processing information.

Tejeda was charged with willful injury, a felony. *See* Iowa Code § 708.4 (2001). The county attorney further alleged Tejeda committed the crime while in possession of a dangerous weapon, an aggravating factor in sentencing proceedings. *See id.* § 902.7.

In December 2002, Tejeda was tried. The jury could not reach a unanimous verdict, and the judge declared a mistrial. A second trial was scheduled for February 17, 2003.

On February 3, Tejeda wrote a letter to Judge Joel Novak. Tejeda told the judge his attorney wanted him to plead guilty

and, when he refused, his attorney got upset and left the room. Tejeda professed his innocence, and then wrote:

> But with my lawyer beside me I can't win. I am asking you to please remove my counsal [sic].... I found out new evidence in my case and I'm scarred [sic] to even bring it to my lawyer's attention. I think he'll tell the prosacutor [sic] before we even get a chance to use it in trial.

On February 5, Judge Eliza Ovrom ordered counsel for both parties to review Tejeda's request and file "any response thereto ... within 10 days. If a hearing is requested, counsel should contact [the court attendant]." A copy of this order was mailed to Tejeda.

In a letter filed on February 13, Tejeda again wrote Judge Novak. Tejeda repeated his desire for new counsel. Tejeda said his attorney had again requested he plead guilty. Believing his attorney was "not going to put in his best intrest [sic]," Tejeda asked the court to appoint substitute counsel. Tejeda believed Jesse Macro, his lawyer in another case, would "represent me to his fullest."

The record contains no other direct references to Tejeda's requests. The parties did not file responses to Judge Ovrom's order, and there is no record of a hearing. Nor is there an order denying Tejeda's request.

At most, there is circumstantial evidence in the court file the court saw Tejeda's requests. Tejeda's second letter was stapled to several other documents in the file. The items in this collection of documents were filed within minutes of each other on February 13. These other documents included: (1) a waiver of speedy trial, signed by the defendant and his attorney; (2) a motion to continue, signed by Tejeda's attorney; and (3) an order resetting trial to March 10. In the motion to continue,

Tejeda's attorney stated that on February 7 he had learned of a new potential material witness, Richard Adair. Tejeda's attorney requested additional time to interview Adair.

Tejeda's second jury trial was held on March 10. At the outset of trial and outside the presence of the jury, Tejeda's attorney, in the presence of the defendant, told the court Tejeda had rejected an offer of a plea from the State. He then stated "And that certainly doesn't mean that we won't represent him zealously. We are ready to proceed today." The defendant remained silent during these statements.

During trial, Tejeda's new witness, Adair, testified he saw someone other than Tejeda attack Heman. Adair did not know Tejeda at the time of the crime, but had only come to know him months later while both were incarcerated. According to Adair, Tejeda told Adair his story (apparently in late January or early February) and upon hearing it Adair remembered he had been at the crime scene, and knew Tejeda didn't strike Heman. Tejeda asked Adair if he would testify on his behalf, and Adair agreed. Adair told his story to the defense attorney on February 12. Several other witnesses contradicted Adair's testimony, however, and Tejeda was found guilty.

On appeal, Tejeda raises three issues for our review: (1) Did the district court deny his right to counsel in failing to adequately inquire into his allegations of a breakdown in the attorney-client relationship?; (2) Did the trial court abuse its discretion in excluding a report of another man's confession to the crime as unreliable hearsay?; and (3) Was Tejeda denied effective assistance of counsel when his attorney failed to object to a jury instruction for which there was no evidence in the record?

## II. Duty of Inquiry and a Breakdown in Communication

Tejeda argues the district court abridged his right to counsel when it failed to inquire after he alleged a breakdown in communication with his attorney and requested substitute counsel. Tejeda points to two letters, in which he (1) stated his attorney was trying to persuade him to plead guilty; (2) told the court he was withholding evidence from his attorney; and (3) requested substitute counsel. In the absence of evidence of an adequate judicial response to his letters—such as holding a hearing in which the court would inquire into the nature of his complaints— Tejeda requests we remand his case to the district court for an inquiry into whether there was an unconstitutional breakdown in communication with his attorney. If the district court determines there was such a breakdown, Tejeda asks for a new trial.

The State contends Tejeda failed to preserve error, and, in the alternative, maintains a hearing was not warranted because Tejeda's letters only show his unhappiness with his attorney's recommendation that he accept a plea bargain.

### A. Standard of Review

■ The parties disagree over the applicable standard of review. The State posits we should review for an abuse of discretion, because it is the standard applied to a district court's denial of a request for substitute counsel. *See State v. Martin*, 608 N.W.2d 445, 449 (Iowa 2000). In this case, however, the court never ruled on Tejeda's request; Tejeda's claim thus poses a constitutional question: Does a court have a duty to inquire sua sponte once a defendant alleges a breakdown in communication? Our standard of review, therefore, is de novo. *See State v. Thompson*, 597 N.W.2d 779, 782 (Iowa 1999) (review of constitutional claims is de novo).

### B. Error Preservation

■ Before turning to the merits, we briefly consider and reject the State's error preservation claim. The State alleges Tejeda failed to preserve error because he never received a ruling from the court.

■ We disagree. Tejeda wrote two letters to the court in support of his request and the question in this case is whether the *court* had a duty to inquire sua sponte once Tejeda complained of his attorney's actions. Although error was not preserved in the traditional sense, Tejeda's two letters sufficiently alerted the trial court of a problem for us to consider the issue. It would be unrealistic to expect much more from a defendant not trained in the law.

### C. Duty of Inquiry

■ The Sixth Amendment to the United States Constitution mandates

> In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. This provision, incorporated into the Fourteenth Amendment, is binding upon the states. U.S. Const. amend. XIV; *see Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975); *State v. Watson*, 620 N.W.2d 233, 235 (Iowa 2001). It does not, however, "guarantee a 'meaningful relationship' between an accused and his counsel.'" *State v. Lopez*, 633 N.W.2d 774, 778 (Iowa 2001) (quoting *Morris v. Slappy*, 461 U.S. 1, 14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610, 621 (1983)).

■ Where a defendant represented by a court-appointed attorney requests the court appoint substitute counsel, sufficient cause must be shown to justify replacement. *Id.* at 778–79. "Sufficient cause includes a conflict of interest, irreconcil-

able conflict, or a complete breakdown in communication between the attorney and the defendant." *Id.* at 779 (citations and internal quotation omitted). The decision to grant a motion for substitute counsel is a matter within the trial court's discretion. *Id.* at 778. Last-minute requests for substitute counsel, insofar as they constitute a delay tactic, are disfavored. *Id.* at 779.

In *State v. Lopez,* we discussed the adequacy of a trial judge's inquiry into a defendant's allegation of a breakdown in communication with his lawyer. *Id.* at 778–781. In *Lopez,* the State did not dispute the existence of a judicial duty to inquire, and therefore we did not explicitly recognize one. *See id.* Instead, we simply noted that, according to federal authority, there is a duty of inquiry once a defendant requests substitute counsel on account of an alleged breakdown in communication. *Id.* at 780 (citing *United States v. Webster,* 84 F.3d 1056, 1062 n. 2 (8th Cir.1996); *Schell v. Witek,* 218 F.3d 1017, 1024–25 (9th Cir.2000); *Romero v. Furlong,* 215 F.3d 1107, 1113 (10th Cir. 2000); *United States v. Davidson,* 195 F.3d 402, 407–08 (8th Cir.1999)). We ultimately determined the judicial inquiry conducted in *Lopez* satisfied the federal standard, and held the district court did not abuse its discretion in denying the defendant's request for substitute counsel. *Lopez,* 633 N.W.2d at 781.

■ Implicit in *Lopez,* however, was the recognition of a duty to inquire; otherwise our examination of the adequacy of the inquiry makes little sense. In light of *Lopez* and the federal authority cited therein, we therefore now explicitly recognize that there is a duty of inquiry once a defendant requests substitute counsel on account of an alleged breakdown in communication. *See id.* at 778–781 (citations omitted); *State v. Irvine,* 547 N.W.2d 177, 180 (S.D.1996) ("When a defendant alleges

the existence of a dispute leading to a destruction of communication and a breakdown in the attorney-client relationship, the judge is obligated to inquire whether such allegations are true." (Citations omitted.)); William W. Schwarzer, *Dealing With Incompetent Counsel—The Trial Judge's Role,* 93 Harv. L.Rev. 633, 652 (1980) ("If at any time during the proceeding the defendant makes a seemingly substantial complaint about the adequacy of counsel ... the judge should conduct an inquiry and make findings on whether bona fide grounds exist for a change of counsel."); *cf. Watson,* 620 N.W.2d at 238 (trial court has a duty of inquiry when it knows or reasonably should know of an actual conflict of interest on the part of defense counsel). As the United States Court of Appeals for the Tenth Circuit recently remarked, an inquiry is necessary because

"Even if a defendant's counsel is competent, a serious breakdown in communication can result in an inadequate defense." A defendant who cannot communicate with his attorney cannot assist his attorney with preparation of his case, including suggesting potential witnesses to call and trial strategies to pursue, discussing whether the defendant himself should testify, and helping formulate other bread-and-butter decisions that can constitute the core of a successful defense. A trial court's failure to appoint new counsel when faced with a total breakdown in communication may thus constitute a denial of counsel in violation of the Sixth Amendment.

*United States v. Lott,* 310 F.3d 1231, 1250 (10th Cir.2002), *cert. denied,* 538 U.S. 936, 123 S.Ct. 1612, 155 L.Ed.2d 336 (2003), and *cert. denied,* 538 U.S. 991, 123 S.Ct. 1812, 155 L.Ed.2d 689 (2003) (quoting *United*

*States v. Musa,* 220 F.3d 1096, 1102 (9th Cir.2000)).

In *Lopez,* we found the trial court conducted an adequate inquiry where the presiding judge, when apprised of a potential breakdown in communication, personally asked the defendant at a hearing to explain the nature of the communication problem. 633 N.W.2d at 781. The defendant, however, failed to give the judge "any reason why he believed communication between his lawyer and him had broken down." *Id.* We determined "[t]he basis of Lopez's complaints had nothing to do with defense counsel's representation." *Id.* As a result, we held the trial court conducted an adequate inquiry, and therefore did not abuse its discretion in denying the defendant's request for substitute counsel. *Id.*

In this case, the court did not inquire into this problem. Unlike *Lopez,* there is nothing suggesting the court determined the nature of the alleged breakdown in communication. The court merely invited counsel to respond to Tejeda's request for substitute counsel. Because the court did not address Tejeda personally, counsel did not respond, and no other measure was undertaken, the nature of Tejeda's allegations was left undisclosed. We simply have no way to determine whether a complete breakdown in communication occurred, in violation of Tejeda's Sixth Amendment right to counsel. *See id.* at 779 (sufficient cause for substitution of counsel includes a "complete breakdown in communication between the attorney and the defendant").

Although there may be some evidence in the record which *may* indicate the court determined there was not a complete breakdown in communication in violation of Tejeda's Sixth Amendment right to counsel, it would be misplaced for us to engage in such speculation. The record

itself is completely silent on whether there was a complete breakdown in communication, and if so, its causes or duration. *State ex rel. C.C.,* 48 P.3d 244, 249 (Utah Ct.App.2002) ("[T]he court's failure to sufficiently explore Appellant's complaints in this case leaves us without the information needed to evaluate whether she was entitled to substitute counsel either as a matter of sound discretion or as a matter of law."); *Schell,* 218 F.3d at 1027 (noting, in habeas context, that "because the state trial court failed to make an appropriate inquiry, the record does not reflect how far the [attorney-client] relationship ... had deteriorated, or whether [the defendant] himself had sabotaged the relationship or failed to make reasonable efforts on his end to develop the relationship ... [because no court has examined his claims] we must take his allegations at face value"). In a case such as this, an evidentiary or in camera hearing—although not required in every case every time a defendant alleges a breakdown in communication—would have been appropriate. *Schell,* 218 F.3d at 1027 ("Evidentiary hearings are particularly appropriate when claims raise facts that occurred out of the courtroom and off the record."); *see, e.g., Lott,* 310 F.3d at 1249 (remanding for a hearing).

■ This is not to say courts must conduct a hearing every time a dissatisfied defendant lodges a complaint about his attorney. In this case the defendant did more than simply ask for counsel of his choice; Tejeda indicated the relationship with his attorney had deteriorated so far that he was withholding evidence from his attorney. *Cf. State v. Williams,* 285 N.W.2d 248, 254 (Iowa 1979) (defendant does not have an absolute right to lawyer of own choosing). Having received a colorable complaint, the district court should have inquired into whether there was "a complete breakdown in communication be-

tween the attorney and the defendant" to the extent Tejeda's Sixth Amendment right to counsel was violated. *Lopez*, 633 N.W.2d at 779.

> The types of communication breakdowns that constitute "total breakdowns" defy easy definition. . . . As a general matter . . . to prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible.

*Lott*, 310 F.3d at 1249.

### D. Remedy

 Tejeda requests we remand his case for a hearing to determine whether there was a complete breakdown in the attorney-client relationship. *See, e.g., Lott*, 310 F.3d at 1250 (remanding for a hearing); *C.C.*, 48 P.3d at 249 (same); *cf. Mickens v. Taylor*, 535 U.S. 162, 170–75, 122 S.Ct. 1237, 1242–46, 152 L.Ed.2d 291, 303–07 (2002) (remand proper remedy for trial court's failure to inquire after defendant's counsel did not object to conflict of interest). *But see State v. Vessey*, 967 P.2d 960, 964 n. 4 (Utah Ct.App.1998) (courts are divided on appropriate remedy); 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.4(b) n. 22, at 554–55 (2d ed.1999). In support of this argument, Tejeda cites *Watson*, our recent Sixth Amendment conflict-of-interest case. In *Watson*, we stated "[i]f the record on appeal shows only the possibility of a conflict [of interest], then the case must be remanded for a determination as to whether an actual conflict existed. . . ." 620 N.W.2d at 238 (but reversing and remanding for new trial because trial court had a duty to inquire into conflict of which it knew or should have known). The case at bar, however, involves a pre-trial breakdown in communication, not a conflict of interest.

Unlike a conflict of interest, a pre-trial breakdown in communication may resolve itself before trial. To simply remand for a hearing to determine whether there was a complete breakdown in communication before trial, then, would accomplish very little; any pre-trial violation of the defendant's Sixth Amendment right to counsel may not have had any adverse effect on his trial defense, if timely ameliorative measures were taken. By contrast, the actual conflict of interest in *Watson* was permanent, and, once identified, constituted a denial of the defendant's constitutional right to counsel. *See id.* at 240–41. In this case, a more expansive hearing, which takes into account the health of the attorney-client relationship at trial, is appropriate.

The record is inadequate for us to resolve this issue on direct appeal. In his letters to the trial court, Tejeda never alleged a *complete* breakdown in communication. Nor is there any other evidence in the record to support such a finding. Instead, we only have Tejeda's bare allegation that he had some communication problems with his attorney. As previously indicated, this allegation triggered a duty to inquire on the part of the trial court, because it might indicate a greater problem was afoot.

Because the record is inadequate for us to rule on direct appeal, we preserve Tejeda's claim for postconviction relief. *Cf. State v. Bass*, 385 N.W.2d 243, 245 (Iowa 1986) (where no record made in the district court, "we pass the issue in this direct appeal and reserve it for post-conviction proceedings.") Postconviction relief is particularly appropriate here, because the defendant claims (1) his "conviction . . . was in violation of the Constitution of the United States" and (2) "[t]here exists evidence of material facts, not previously presented and heard, that required vacation of

the conviction ... in the interest of justice." Iowa Code § 822.2(1), (4). Although decided in the ineffective-assistance-of-counsel context, our discussion in *State v. Coil* is particularly instructive with respect to Tejeda's Sixth Amendment claim:

> We have said we should not decide a claim such as is made here without an adequate factual basis to support it. There are cases when incompetency is so glaring that we are justified in saying so upon an examination of the record. Ordinarily, we should be slow to do so on what amounts to an ex parte hearing . . .
>
> This holding is without prejudice to [the defendant's] right to raise this issue by application for postconviction relief, where a full evidentiary hearing may be had and where counsel will have an opportunity to respond to defendant's charges.

264 N.W.2d 293, 296 (Iowa 1978) (citations omitted). Given the scant record before us and the availability of an adequate remedy in postconviction, we affirm the judgment of conviction without adjudicating whether Tejeda was denied his Sixth Amendment right to counsel. Instead, we preserve this issue for postconviction proceedings, in which an adequate hearing may be held and a record developed. *Cf. State v. O'Connell*, 275 N.W.2d 197, 206 (Iowa 1979) ("We find no basis on the record before us to hold defendant's trial counsel did not perform within the range of normal competence. We determine we should affirm the judgment but without adjudicating the issue.... Defendant's right to raise that issue by postconviction proceedings ... is reserved.") (citations omitted).

### III. Exclusion of Hearsay Evidence

In his second assignment of error, Tejeda claims the district court erred in refusing to permit his ex-girlfriend, Leticia Lopez, to testify that she heard another man, Saloman Ayala, admit to the crime. Lopez was prepared to testify that Ayala, while in an excited state, confessed to the crime in an alleyway some ten to thirty minutes after Heman was attacked. Ayala's alleged confession came in response to Lopez's question "Who did it?". The district court excluded the evidence as unreliable hearsay.

### A. Standard of Review

Where a party challenges the district courts exclusion of evidence as hearsay, appellate review is for an abuse of discretion. *State v. Forsyth*, 547 N.W.2d 833, 839 (Iowa Ct.App.1996).

### B. The Merits

A hearsay statement "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801(*c*). Hearsay is generally inadmissible. *Id.* 5.802. The "excited utterance" doctrine is one recognized exception to the general rule. *Id.* 5.803(2). An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* The rationale behind the exception is that statements made under the stress of excitement are less likely to involve deception than if made upon reflection or deliberation. *See* Jay M. Zitter, Annotation, *When is Hearsay Statement "Excited Utterance" Admissible Under Rule 803(2) of Federal Rules of Evidence*, 155 A.L.R. Fed. 583, 583 (1999) (excited utterance exception "presupposes that the declarant blurted out a remark while under the influence of the startling event, so that it is unlikely

that the remark was the product of conscious thought or reflection, but was probably accurate"); *see State v. Mateer*, 383 N.W.2d 533, 535 (Iowa 1986).

> The application of the exclusion lies largely within the discretion of the trial court, which should consider (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999). Although neither is conclusive, in this case the first two *Atwood* factors weigh heavily against the evidence's admission: (1) Ayala's statement was made in another location up to thirty minutes after the incident; and (2) the statement was made in response to a direct question. We therefore conclude the district court did not abuse its discretion in refusing to admit Lopez's testimony as an excited utterance. The factors tend to show the statement was not made as the spontaneous reaction to a startling event, but rather the product of reflection or deliberation in response to a question. *See Mateer*, 383 N.W.2d at 535.

## IV. Ineffective Assistance of Counsel

Tejeda claims his trial counsel was ineffective for failing to object to a jury instruction regarding admissions. The instruction read:

> Evidence has been offered to show the Defendant made statements at an earlier time and place while not under oath. These statements are called admissions.
>
> You may consider an admission for any purpose.

Tejeda points out none of his admissions were presented to the jury during trial.

As a result, Tejeda claims, the instruction is inherently confusing and may have wrongly led the jurors to believe he made an admission.

### A. Standard of Review

Where a defendant alleges ineffective assistance of counsel, our standard of review is de novo. *State v. Liddell*, 672 N.W.2d 805, 809 (Iowa 2003). While generally preserved for postconviction relief, where presented with an adequate record, the merits of the defendant's claim may be resolved on direct appeal. *Id.* In this case, we deem the record sufficient.

### B. The Merits

For his ineffective-assistance-of-counsel claim to succeed, Tejeda must prove by a preponderance of the evidence that "(1) his counsel failed to perform an essential duty, and (2) prejudice resulted." *Id.* Because proof of both prongs of this test is required, should Tejeda fail to prove prejudice we need not consider whether his trial counsel failed to perform an essential duty. *State v. Oetken*, 613 N.W.2d 679, 683 (Iowa 2000). In this context, "prejudice must give rise to a reasonable probability the outcome of the proceeding would have been different had counsel not erred." *Id.* at 684.

Assuming, for the sake of argument, that no admissions were presented to the jury, it is clear Tejeda did not suffer prejudice, and for this reason we reject his ineffective-assistance-of-counsel claim. It is true that we have said that "an instruction submitting an issue unsubstantiated by evidence is generally prejudicial." *State v. Mays*, 204 N.W.2d 862, 865 (Iowa 1973) (error to submit to jury aiding-and-abetting instruction where no proof anyone other than the defendant was involved in the crime); *see also State v.*

*Smith,* 129 Iowa 709, 717, 106 N.W. 187, 190 (1906) ("the giving of a jury instruction which has no basis in the evidence is reversible error"). Unlike the case at bar, however, *Mays* and *Smith* were decided on direct appeal, and not in the ineffective-assistance-of-counsel context. In the ineffective-assistance-of-counsel context,

> the facial appeal of [the defendant's argument] is diminished in most situations where practical considerations make it unlikely that the inclusion of a particular element in the marshaling instruction would have produced any difference in the verdict of the jury.

*State v. Broughton,* 450 N.W.2d 874, 876 (Iowa 1990) (quoting *State v. Propps,* 376 N.W.2d 619, 623 (Iowa 1985)). In this case submission of this superfluous jury instruction did not raise an issue which "give[s] rise to a reasonable probability the outcome of the proceeding would have been different had counsel not erred." *See Spies,* 672 N.W.2d at 799. Jury "instructions must be considered as a whole," and here another instruction made clear that it was the jury's duty to decide the facts of the case. *Cf. Noland v. Kyar,* 228 Iowa 1006, 1011, 292 N.W. 810, 813 (1940). The jury, as arbiter of the facts, should have disregarded the court's suggestion that the prosecution had offered evidence to show Tejeda had made an admission, and we think that such is the inevitable conclusion to be drawn about the jury in this case. There is no suggestion the instruction contradicts another instruction or misstates the law; Tejeda only alleges submission of this superfluous instruction was confusing. His claims about the effect on the jury are speculative, and, we think, without merit. The prosecution presented overwhelming evidence to show Tejeda was Heman's assailant. Tejeda has failed to show prejudice, and for this reason we reject his ineffective-assistance-of-counsel claim.

## V. Conclusion

The district court had a duty to inquire into a potential breakdown in communication between Tejeda and his trial counsel. We preserve the issue of whether there was a complete breakdown in communication for postconviction proceedings. We affirm the district court's evidentiary ruling. The court did not abuse its discretion in excluding Tejeda's ex-girlfriend's testimony about another man's confession to the crime as unreliable hearsay. Lastly, we reject Tejeda's ineffective-assistance-of-counsel claim, because he fails to show he was prejudiced when his trial attorney did not object to a jury instruction which lacked evidentiary support in the record. In this respect, we also affirm.

**AFFIRMED.**