# IN THE COURT OF APPEALS OF IOWA

No. 16-1123
Filed September 13, 2017

**ALLEN KILLINGS,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson

(pretrial) and Lawrence P. McLellan (trial), Judges.

Allen Killings appeals the denial of his application for postconviction relief.

**AFFIRMED.**

Andrea K. Buffington of Ranes Law Firm, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kelli Huser, Assistant Attorney

General, for appellee State.

Considered by Doyle, P.J., Bower, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**DOYLE, Presiding Judge.**

Allen Killings appeals the denial of his application for postconviction relief (PCR). He challenges the PCR court's ruling denying his request for appointment of new PCR counsel, as well as the court's determination to combine the PCR case with Killings's other pending PCR matter. We affirm.

### I. Background Facts and Proceedings.

In 2009, Killings was found guilty of first-degree murder. *See State v. Killings*, No. 09-0739, 2010 WL 3894161, at *1-2 (Iowa Ct. App. Oct. 6, 2010). That year, Killings was also found guilty of first-degree robbery and four counts of second-degree sexual abuse in an unrelated matter. *See State v. Killings*, No. 10-0858, 2011 WL 1781518, at *1 (Iowa Ct. App. May 11, 2011). We affirmed all of his convictions on direct appeal. *See Killings*, 2010 WL 3894161, at *1-2; *Killings*, 2011 WL 1781518, at *1.

In 2011, Killings filed an application seeking PCR in the murder case. The matter was docketed as PCCE068339.[1] Killings also filed an application seeking PCR in the robbery/sexual abuse case. It was docketed as PCCE069818, and it is this PCR application that is the subject of this appeal. Killings requested counsel be appointed, and the PCR court appointed one attorney to represent Killings in both PCR cases.

In April 2013, a month prior to the scheduled trial date in PCCE069818, Killings filed a motion requesting new counsel be appointed in both PCR cases. He asserted that his appointed counsel was not proceeding as Killings directed.

---

[1] This court affirmed the district court's denial of this PCR application. *See Killings v. State*, No. 15-1061, 2017 WL 1735614, at *5 (Iowa Ct. App. May 3, 2017).

Trial in that case was continued to December 2013, and then again to June 2014.

In April 2014, Killings filed another pro se motion requesting new counsel be appointed to represent him. Killings's motion expressly stated:

> **Note**: the appointment of new counsel will not delay the proceedings because Mr. Killings simply desires new counsel to help him present his "pro se" case to the court in the best possible manner—once he has filed his pro se brief. Which will be shortly after the court does appoint new counsel.

A hearing on Killings's motion was held, and Killings appeared telephonically. The PCR court asked Killings to clarify the relief he sought in his motion, summarizing: "So if I am to understand your motion correctly, Mr. Killings, you are asking the court to allow [your appointed counsel] to withdraw, and you want to proceed by—alone; is that right?" Killings responded, "Well, I am asking the court to grant me another attorney just to make sure I do it right. Just to make sure that my pro se brief is presented right in a manner to be presented to you." Killings also clarified that his request for appointment of new counsel was meant to apply to both of his PCR cases. The PCR court ruled that Killings would be allowed to proceed pro se, but his appointed counsel would be relegated to standby counsel; no new counsel would be appointed, and the June 2014 trial date would remain.

At some point thereafter, Killings filed a motion requesting the court reconsider its ruling permitting him to proceed pro se, insisting that he could not represent himself, and seeking appointment of new counsel. The PCR trial commenced on June 30, 2014 as scheduled, and the court heard Killings's motion to reconsider. Killings stated:

> Your Honor, I would like you to reconsider me doing this case pro se. I do not know how to do a pro se case. I want you to reconsider appointing me an attorney who would help me present the issues and preserve the issues that I would like the court to hear.
>
> I also would like you to reconsider doing both of these cases at one time. I haven't even dealt with the first case, [PCCE068339], and getting the issues and preserving the issues that I want in that case, let alone the [PCCE069818 case]. I haven't even did any work on that case, yet today [we're] having trial on both cases.

The court denied his motion and attempted to hear Killings's case. However, Killings told the court he had not had time to prepare anything and that he had not requested to proceed pro se, explaining his counsel indicated there were issues counsel would not raise but that Killings could present those issues himself. The court "very reluctantly" continued the trial but warned Killings this was the last continuance of both cases, and that if he "came to the next trial and [said he was] not ready," the court would move forward anyway. The court reappointed standby counsel to represent Killings in both matters. The court advised Killings he could present any issues at the next hearing that his attorney was not willing to raise. Trial was continued to October 2014, with PCCE069818 to be tried at the conclusion of the trial in PCCE068339.

Trial commenced in October 2014. After the trial in PCCE068339 concluded, the court heard PCCE069818 as scheduled. Killings stated he was not prepared to go forth in that case, and he did not want his appointed counsel to represent him. Killings admitted he knew the case was to be heard on that date, but he claimed he was waiting on counsel to send information and provide to him case law. The court advised Killings that the trial would go on as scheduled, and Killings told the court he "[didn't] have [his] stuff in front of [him]."

Killings's appointed counsel attempted to elicit testimony from Killings about his claims, but Killings was unhelpful, to put it mildly. Killings stated it was too much for him; he was confused, and his mind was still on the PCCE068339 case. The court requested Killings explain his claims, but Killings could not or would not. Thereafter, the PCR court entered its order denying Killings's PCR application.

Killings now appeals the PCR court's denial of his application, asserting the PCR court should have appointed a new attorney to represent him and tried the two matters separately.

### II. Standard of Review.

Our review of the PCR court's decision to deny Killings's requests for appointment of new PCR counsel is for an abuse of discretion. *See Leonard v. State*, 461 N.W.2d 465, 469 (Iowa 1990); *see also State v. Tejeda*, 677 N.W.2d 744, 750 (Iowa 2004) ("The decision to grant a motion for substitute counsel is a matter within the trial court's discretion."). Similarly, we also review a court's decision to consolidate actions for an abuse of discretion. *See Johnson v. Des Moines Metro. Wastewater Reclamation Auth.*, 814 N.W.2d 240, 245 (Iowa 2012); *see also* Iowa R. Civ. P. 1.913; *State v. Johnson*, 756 N.W.2d 682, 689 (Iowa 2008). An abuse of discretion occurs if the court's discretion "is exercised on grounds or for reasons 'clearly untenable or to an extent clearly unreasonable.'" *Leonard*, 461 N.W.2d at 469 (citation omitted).

### III. Discussion.

Killings asserts the PCR court should have appointed a new attorney to represent him and tried the two matters separately. Killings points to his numerous complaints about his appointed counsel before the PCR court as

justification for the appointment of new counsel. He maintains his appointed attorney "was not communicative," was "uncooperative," and based on Killings's own testimony, he "was not prepared for the trial and had not thoroughly discussed the issues with [his appointed attorney]." He argues the problems were exacerbated by the attorney's appointment to represent him in both PCR cases and by trying both cases the same day. He also asserts the court should have had a colloquy with him "to determine whether such waiver of his statutory right to counsel was sufficiently voluntary and intelligent." We are not persuaded.

PCR "proceedings are not criminal proceedings, but rather are civil in nature." *Jones v. State*, 479 N.W.2d 265, 269 (Iowa 1991). Consequently, "[m]any of the constitutional safeguards guaranteed an individual in criminal trial proceedings are not granted to such an individual in subsequent [PCR] proceedings." *Id.* One of the distinctions between criminal trial proceedings and PCR proceedings is one's constitutional right to counsel. *See Fuhrmann v. State*, 433 N.W.2d 720, 722 (Iowa 1988). Specifically, defendants in criminal trial proceedings have the right to counsel under the Iowa Constitution and the United States Constitution. *See State v. Majeres*, 722 N.W.2d 179, 182 (Iowa 2006) (citing U.S. Const. amend. VI; Iowa Const. art. I, § 10). Applicants in PCR proceedings do not have that constitutional right. *See Fuhrmann*, 433 N.W.2d at 722 ("[T]he United States Supreme Court has clearly announced the right to appointed counsel for a convicted criminal extends only to the first appeal of right, not to a collateral appeal on a conviction that has long since become final upon the exhaustion of the appellate process. We would construe our own constitution likewise." (citation omitted)).

Iowa Code section 822.3 (2013), formerly section 663A.5, does not expressly require the appointment of PCR counsel upon a PCR applicant's request. However, its language has been interpreted to mean that a PCR court can appoint the applicant counsel at its discretion. *See Jones v. State*, 731 N.W.2d 388, 391 (Iowa 2007); *Dunbar v. State*, 515 N.W.2d 12, 14 (Iowa 1994); *Leonard*, 461 N.W.2d at 467-68; *Fuhrmann*, 433 N.W.2d at 722. The Iowa Supreme Court has recommended that PCR counsel be appointed if it appears that a substantial issue of law or fact *may* exist. *See id.* If PCR counsel is appointed, that attorney is required to provide the applicant effective representation. *See Dunbar*, 515 N.W.2d at 14-15. Nevertheless, the PCR court retains the discretion of whether to remove the appointed counsel upon the applicant's request. *See Jones*, 731 N.W.2d at 391. Even in criminal matters, where a defendant has a constitutional right to counsel, there is no guarantee of a "'meaningful relationship between an accused and his counsel.'" *Tejeda*, 677 N.W.2d at 750 (citation omitted). Moreover, requesting new counsel at the last minute as a delay tactic is disfavored. *See id.*

Here, Killings's claims are based upon rights he does not have in a civil PCR proceeding. While a trial court has a duty in a criminal matter to inquire into assertions of a breakdown in communication between the defendant and his appointed attorney, this duty arises to safeguard the defendant's constitutional right to counsel—a right a PCR applicant simply does not have. *See id.*; *Fuhrmann*, 433 N.W.2d at 722. Thus, a breakdown of communication between a PCR applicant and his appointed counsel does not trigger the same constitutional protections or necessitate the same inquiry of the court—though

the record evidences here that the PCR court *did*, on several occasions, inquire into Killings's allegations concerning his counsel and found them to be without merit. Similarly, the PCR court had no obligation to conduct a colloquy with Killings to determine if he voluntarily and intelligently waived the right of representation in the PCR proceeding because Killings had no such right.

Additionally, there is no evidence or even allegations on appeal that Killings's PCR counsel provided ineffective assistance. *See, e.g.*, *Dunbar*, 515 N.W.2d at 15 ("When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job. The applicant must state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome." (citation omitted)). Rather, Killings is disgruntled with the PCR court's ruling that it would not appoint him new counsel on the eve of the scheduled PCR trial. We do not find the court abused its discretion in so ruling.

Though Killings later claimed he did not request to represent himself, a review of the record makes clear that he did initially make the request. The court was very direct with Killings during the May 2014 hearing on his motion for new counsel in clarifying the relief Killings was requesting. The court expressly found that the appointed attorney had communicated with Killings, contrary to Killings's allegations, and that it would not appoint new counsel with the trial date looming. The court found Killings's appointed counsel was familiar with the case and, if Killings wanted to proceed pro se, his appointed counsel could be his standby counsel. Thus, the court essentially gave Killings two choices at that point—

proceed with the appointed counsel or proceed pro se with the assistance of standby counsel.

Then, despite being told the matter would not be continued again, Killings at the June 2014 trial made the same arguments he previously made for appointment of new counsel. The court reappointed counsel, gave Killings a month to sort out his issues with his counsel and file any amendments to his application, and continued the matter. Following another written request for new counsel, the PCR court expressly denied Killings's request. The court explained it found "no justifiable reason to remove [Killings's appointed] counsel in PCCE069818," noting the attorney had actively prepared both PCR cases for trial.

Yet, despite being given additional time, Killings's presentation at the October 2014 hearing was the same as the June 2014 hearing. He was not prepared. He claimed he was overwhelmed and that his counsel did not help him. He still wanted a new attorney appointed. His attorney attempted to elicit testimony in response to Killings's pro se filings and PCR applications, but Killings was vague and unresponsive. Killings was given the opportunity to present evidence at trial, but ultimately, he did not do so. We find no abuse in the district court's discretion to deny appointment of a new PCR counsel.

Finally, we find no abuse in the district court's decision to try the PCR cases consecutively on the same day. It was in the interests of judicial economy to do so. The parties and their attorneys were the same in both matters. Furthermore, Killings had more than ample time to prepare to try both matters on the same day. "It is well established trial judges have considerable discretion

over matters related to the orderly conduct of trial." *Johnson*, 756 N.W.2d at 689. We find, under the circumstances of the case, the PCR court did not abuse its discretion to hear the cases one after the other.

### IV. Conclusion.

Because we find the PCR court did not abuse its discretion in denying Killings's requests for the appointment of a new attorney or in hearing the two cases consecutively, we affirm the PCR court's ruling denying Killings's PCR application.

**AFFIRMED.**