# IN THE COURT OF APPEALS OF IOWA

No. 17-1567
Filed April 17, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**AARON CHRISTOPHER ORTIZ,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.

        A defendant appeals his conviction and sentence for assault with intent to

commit sexual abuse causing bodily injury. **AFFIRMED**.

        Joseph C. Glazebrook, Thomas Hurd, and Andrew Duffelmeyer of

Glazebrook & Hurd, LLP, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant

Attorney General, for appellee.

        Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

After Aaron Ortiz turned eighteen in 2015, the probate court appointed his mother, Mandi Smith, as his guardian under Iowa Code section 633.556 (2015). The guardianship continued in 2017 when Ortiz pleaded guilty to assault with intent to commit sexual abuse causing bodily injury. He now appeals his conviction and sentence for that crime. He alleges, for the first time on appeal, because his status as ward and his intellectual disabilities prevented him from making legal decisions, his guardian should have been involved in all critical stages of his criminal case—especially the competency proceedings under Iowa Code chapter 812 (2017) and the guilty plea hearing. He asks us to vacate his conviction and remand for new proceedings with the participation of his guardian. Alternatively, Ortiz argues his prison sentence constitutes cruel and unusual punishment.

Ortiz advances novel legal issues on a meager factual record. *See State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015) ("Our review in this case is impacted by the limited nature of the advocacy and the limited record developed below."). Ortiz acknowledges, despite having legal representation, he did not argue his claims about the guardian's participation to the district court. Yet on appeal he does not blame his plea counsel. Instead, to excuse his failure to raise these issues, he cites the concept of structural error and his alleged incompetence. On this undeveloped record, neither ground allows us to reach the merits of Ortiz's challenge to his conviction.

Regarding his sentencing claim, we cannot find it is categorically unconstitutional to impose a prison term of any length on an adult with intellectual disabilities. Accordingly, we affirm his conviction and sentence.

## I.    Facts and Prior Proceeding

In March 2015, the probate court considered the functional limitations of Aaron Ortiz and decided a limited guardianship would not be appropriate.[1] The court granted his mother plenary powers to make legal decisions on his behalf. *See* Iowa Code § 633.635 (2015).[2]

In May 2017, T.Y. was returning home from walking her dog when Ortiz approached her, asking if she knew a certain person. She told him she just recently moved into the neighborhood and was not yet well acquainted. She suggested "the lady across the street" might be a better resource. Ortiz asked for pen and paper to jot down that neighbor's name. T.Y. retrieved pen and paper for him. But when she tried to reenter her front door, according to the minutes of evidence, Ortiz "suddenly and for no reason given, reached around her with both hands and aggressively grabbed her breasts and began squeezing and pinching." T.Y. was able to grab her cell phone and call 911. At the prospect of police responding, Ortiz left her front porch on foot. A neighbor witnessed Ortiz "manhandling" T.Y. and drove around looking for the suspect, eventually locating Ortiz for the police.

The State charged Ortiz with assault with intent to commit sexual abuse causing bodily injury, a class "D" felony, in violation of Iowa Code section 709.11(2) (2017). Defense counsel asked for a competency evaluation of Ortiz, asserting:

---

[1] Our supreme court agreed to take judicial notice of the fact that a guardianship was established for Ortiz in Polk County and it remained in effect at the time of his guilty plea in this case. But the court directed Ortiz to remove from his brief any references to "the contents of the records in the guardianship proceeding."

[2] Because the guardianship was based on Ortiz's intellectual disability, the court also determined Ortiz was eligible to vote, but had to seek approval of the guardian before getting married. *See* Iowa Code §§ 633.556, 633.635(4).

> Evident from the undersigned's interactions with the [d]efendant, the undersigned believes the [d]efendant suffers from a serious mental health issue. The [d]efendant also has a probation violation pending in FECR296889, and during that underlying case, a competency evaluation was completed by Dr. Craig Rypma where the defendant was found to not be competent to stand trial. The defendant is under a guardianship due to his intellectual disability.

Defense counsel asked for Dr. Rypma to again examine Ortiz.

The district court suspended the proceedings and ordered Ortiz to be examined by Dr. Michael Huston to determine his competency to stand trial under chapter 812. Dr. Huston interviewed Ortiz at the Polk County jail on July 7, 2017. Dr. Huston also interviewed Ortiz's mother and guardian, Mandi Smith. According to the psychologist's report, the guardian said Ortiz "was given a diagnosis of Attention Deficit Hyperactivity Disorder at an early age, and that in the past 10 years he has received diagnoses of Intellectually Disabled and Autism Spectrum Disorder."

From his evaluation, Dr. Huston concluded Ortiz "showed minimal impairment in his ability to understand and appreciate the charge against him and his legal situation." The doctor further found Ortiz showed "mild impairment" in his ability to understand legal proceedings and in his ability to assist in his own defense. Overall, Dr. Huston found Ortiz competent to stand trial, explaining:

> Mr. Ortiz has a mental health condition that has been diagnosed as Autism Spectrum Disorder, Impulse Control Disorder, and possibly Intellectual Disability. He is currently receiving and complying with psychiatric treatment at the jail, which appears to be controlling his symptoms effectively. His treatment at the IMCC in Oakdale last fall and winter apparently was helpful in improving his knowledge about court proceedings as part of the competency restoration process.

After a hearing on July 20, the court found Ortiz competent to stand trial.[3]

Ortiz appeared for a plea hearing on September 6, 2017. At the hearing, the court asked Ortiz, "Do you feel like you're able to understand what it is that you're being accused of and basically what the consequences are going to be if you admit to having done that?" Ortiz replied, "No, your Honor." Also during the hearing, defense counsel revealed he had misinformed his client that probation was an option when the crime charged was a forcible felony requiring imprisonment. In light of that new information, Ortiz asked for a chance "to talk to his mother, his guardian, about what to do before he makes a decision." Counsel told the court Smith was in attendance, but the court ended the hearing, directing the attorneys to "figure out a new date and time for us to resume or to reconvene this proceeding and revisit the plea."

The parties reconvened about three weeks later for a combined plea and sentencing hearing. Ortiz told the court he understood the charges and wanted to go forward with his guilty plea.[4] Ortiz admitted the factual basis for the assault-with-intent offense. After the court accepted the guilty plea, Ortiz asked to proceed to immediate sentencing. The court explained that by doing so, Ortiz would waive his right to file a motion in arrest of judgment and could not complain on appeal about any problem with his guilty plea. Ortiz said he understood and wanted to be sentenced that day.

---

[3] It does not appear the competency proceeding was reported.

[4] As part of the plea agreement, the State dismissed a charge stemming from Ortiz's conduct while in the Polk County jail.

The conviction for assault with intent to commit sexual abuse required an indeterminate five-year prison sentence but carried no mandatory minimum term. The court had discretion to run the assault sentence concurrent to or consecutive with Ortiz's sentence for robbery in the third degree.[5] The prosecutor argued for consecutive terms not to exceed seven years based on the violent nature of current offense. Defense counsel recommended concurrent terms.[6]

The district court imposed consecutive sentences, explaining Ortiz needed more time to focus on his rehabilitation and to protect the public. Ortiz appeals his conviction and sentence.[7]

## II.    Scope and Standard of Review

"We review alleged violations of state or federal constitutional rights de novo." *State v. Harrison*, 914 N.W.2d 178, 187 (Iowa 2018). De novo review means we make an independent evaluation based on the totality of circumstances appearing in the trial court record. *Id.*

---

[5] Ortiz received a deferred judgment on that offense in February 2017. The court revoked probation and imposed the original sentence after Ortiz stipulated to the violation.

[6] Defense counsel also offered two letters: one from Smith and one from ChildServe worker, Keifer Nevius, who was the case manager for Ortiz's Intellectual Disability waiver, a program that allowed him to receive support in the community rather than reside in a mental health institution. Smith described Ortiz's behavioral struggles over the years and her efforts to get him help. Nevius described a "24-hour, locked door" program available for Ortiz at the Woodward Resource Center.

[7] During the briefing process, Smith—represented by the Drake Legal Clinic—sought leave to file an amicus brief in support of Ortiz. *See* Iowa R. App. 6.906(1). Smith asserted she had an important interest in the outcome of the case as Ortiz's legal guardian. The State did not resist and our supreme court accepted Smith's amicus brief. The well-written amicus brief argues "[t]he similarities between a minor child and a ward illustrate the need to extend the protections offered in juvenile delinquency proceedings to criminal proceedings involving a defendant under a guardianship." In its appellee's brief, the State declines to address those arguments, contending the amicus brief "attempts to raise issues that were not preserved" in contravention of rule 6.906(5)(b)(3). We find the preservation challenge faced by the amicus rises or falls with the validity of the error-preservation exceptions urged by Ortiz.

### III.   Analysis

#### A.  Request to Vacate Conviction

Ortiz alleges the competency and plea proceedings were not fair because the district court did not ensure his guardian's involvement.  He contends the absence of his guardian constituted "structural error" effectively denying him the constitutional right to be present at all critical stages of the proceedings and the right to counsel.  He also claims a violation of procedural due process.  He asks us to vacate his conviction and remand for proceedings with the participation of his guardian.

*1. Allegation of Structural Error.*  Ortiz recognizes his first hurdle is error preservation.  Because he did not file a motion in arrest of judgment, generally "no appellate review may be obtained on the validity of the plea proceeding."  *See State v. Lucas*, 323 N.W.2d 228, 231 (Iowa 1982) (applying what are now numbered as Iowa Rules of Criminal Procedure 2.8(2)(d) and 2.24(3) to claim plea-taking judge should have held competency hearing under Iowa Code section 812.3).[8]  Ortiz argues because his complaint involves "structural error," it is exempt from the preservation requirement.

In response, the State notes Ortiz is not asserting structural error to satisfy the prejudice prong in an ineffective-assistance-of-counsel claim.  *See Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011) (holding no specific showing of prejudice is required when counsel's error renders the adversarial process itself

---

[8] Ortiz argues for the first time in his reply brief, under the catch-all category in Iowa Code section 633.635(g), only the guardian had the right to file a motion in arrest of judgment, excusing his failure to preserve error.  We generally do not consider an argument raised for the first time in a reply brief.  *Villa Magana v. State*, 908 N.W.2d 255, 260 (Iowa 2018).

presumptively unreliable); *see also Krogmann v. State*, 914 N.W.2d 293, 325 (Iowa 2018) (presuming prejudice under article I, section 10 of Iowa Constitution). Rather, Ortiz is alleging a free-standing claim of structural error akin to the outright denial of counsel. *See generally Gideon v. Wainwright,* 372 U.S. 335, 343–45 (1963).

While claims raised in the context of ineffective assistance of counsel are an exception to error preservation, the State contends structural error standing alone is not. *See Weaver v. Massachusetts*, 582 U.S. ___, ___, 137 S. Ct. 1899, 1910, 1913 (2017) (defining "structural error" as the kind of government deprivation of a right that cannot be deemed "harmless beyond a reasonable doubt" and discussing it as either preserved error or in the context of ineffective assistance of counsel).[9] The State insists because Ortiz does not raise a claim of ineffective assistance of counsel, "his claim of structural error does not provide a way around error preservation."[10] But despite Ortiz not invoking ineffective assistance of counsel, the State urges his claim "is one that would be best preserved for post-conviction relief because the record is not currently adequate to address it."

---

[9] *Weaver* noted claims of ineffective assistance "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial." 582 U.S. at ___, 137 S. Ct. at 1912. And because doing so may undermine the finality of convictions, when petitioners raise structural error in the context of ineffective-assistance claims (at least concerning the right to a public trial), they must show prejudice to obtain a new trial. *Id.* at ___, 137 S. Ct. at 1913.

[10] This view is not universally accepted. *See* 24 C.J.S. Criminal Procedure & Rights of Accused § 2582 ("While for nonstructural errors relief for error is tied in some way to the error's prejudicial effect, it is only for certain structural errors undermining the fairness of the criminal proceeding as a whole that reversal is required *without regard to whether the error was preserved* or the mistake's effect on the proceeding." (emphasis added)). Regardless, we find it unnecessary to decide if free-standing structural error can be an exception to error-preservation rules because Ortiz can raise a claim of ineffective assistance for the first time in a postconviction-relief action. *See* Iowa Code § 814.7(1).

We agree resolution of Ortiz's constitutional claims requires a more developed record. *Cf. State v. Tejeda*, 677 N.W.2d 744, 753 (Iowa 2004) (affirming judgment without adjudicating Sixth Amendment claim due to "scant record" and "availability of an adequate remedy in postconviction"). For instance, we do not know the breadth of Smith's involvement in the competency hearing beyond the fact Dr. Huston contacted her before reaching his recommendation. We likewise have little information about the extent to which defense counsel consulted with Smith though, during the aborted plea hearing, he did convey his client's request to confer with his guardian before deciding to plead guilty. We also lack details about the reasons for the guardianship and Ortiz's mental status. Because we do not pass on the merits of his claims on direct appeal, they are still available to Ortiz in postconviction proceedings.[11] *See Lucas*, 323 N.W.2d at 233.

*2. Allegation of Procedural Due Process Violation.* As a second line of defense, Ortiz argues his due process rights were violated because the court failed to involve his plenary guardian. He contends not involving his guardian left him without protection as a person found incompetent in the probate context. He also argues he was not required to preserve error because of his incompetence. He quotes *Lucas*: "It is fundamental that if the defendant was incompetent he was in no position to preserve error, request a section 812.3 hearing, or avoid a waiver of his motion in arrest of judgment." 323 N.W.2d at 232.

---

[11] Although we do not reach the merits of Ortiz's claims, we do note the cautions raised by the State concerning the downside to creating "tiers of competency." The State asserts "the involvement of his guardian is not only superfluous, it is problematic."

The trouble with this reasoning is that defense counsel requested and received a competency evaluation for Ortiz before the guilty plea. Based on the psychologist's recommendation, the district court found Ortiz competent to proceed with his criminal case. And Ortiz's status as a ward does not automatically signal his incompetency to enter a plea. *See Koehler v. State*, 830 S.W.2d 665, 666 (Tex. Ct. App. 1992) ("Proceedings under the Texas Probate Code appointing guardians of persons of unsound mind and proceedings under the Texas Code of Criminal Procedure determining legal competence to stand trial are dissimilar and have different purposes."); *see also Blakely v. Tompkins*, No. 2:16-CV-0379-TOR, 2016 WL 7378999, at *3 (E.D. Wash. Dec. 19, 2016) ("Capacity for purposes of a guardianship and capacity to be tried for crimes are two separate legal concepts."); *Yater v. Commonwealth*, Nos. 2017-CA-000402-MR and 2017-CA-00403-MR, 2018 WL 6600234, at *2 (Ky. Ct. App. Dec. 14, 2018) (holding findings in guardianship proceeding were relevant but the guardianship "inquiry is different from a determination of his competency to stand trial in a criminal matter").

In fact, Ortiz does not contest the competency findings. He argues only that due process mandates the guardian's "participation" in the criminal proceedings. Because Ortiz was found competent under chapter 812 and did not raise this claim in the district court, we cannot decide it on direct appeal. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").[12]

---

[12] Accordingly, we also cannot reach the claims raised in Smith's amicus brief.

**B. Request for Resentencing**

Ortiz next argues "the application of a mandatory minimum sentence" and "the sentencing court's failure to consider the mitigating impact of his impairments" constituted cruel and unusual punishment. *See* U.S. Const. amend. VIII; Iowa Const. art. I, § 17. We may consider this type of illegal-sentence claim for the first time on appeal. *State v. Lyle*, 854 N.W.2d 378, 382 (Iowa 2014).

Cruel-and-unusual-punishment challenges come in two varieties: categorical as to a class of offenders (previously called a facial challenge) and "gross proportionality" comparing the defendant's particular sentence with the seriousness of the crime (previously called as-applied). *See State v. Oliver*, 812 N.W.2d 636, 640 (Iowa 2012). Ortiz raises only a categorical challenge.[13] He contends "this [c]ourt should hold that application of mandatory minimum sentences to offenders with [intellectual disabilities] categorically violates the cruel and unusual punishment provisions of the Iowa and U.S. Constitutions and thus is an illegal sentence."[14] He relies on *Atkins v. Virginia*, where the United States Supreme Court decided execution was an excessive punishment for "a mentally retarded criminal." 536 U.S. 304, 321 (2002). He also compares his situation to juvenile sentencing cases like *Lyle*, 854 N.W.2d at 380.

---

[13] Ortiz does suggest we look to *State v. Ryan*, 396 P.3d 867, 868 (Or. 2017), where the Oregon Supreme Court considered an "as-applied challenge" to a mandatory-minimum prison sentence. But Ortiz does not engage in the three-step analysis to determine whether his sentence was "grossly disproportionate" under the Iowa and United States Constitutions. *See Harrison*, 914 N.W.2d at 202–03. Accordingly, we do not decide whether the seven-year indeterminate prison sentence was grossly disproportionate to his culpability.

[14] Ortiz asked the supreme court to retain this case, but it instead transferred the appeal to our court.

We evaluate a categorical challenge in two steps. *Lyle*, 854 N.W.2d at 386. First, we investigate whether a national consensus exists in opposition to the particular sentencing practice as expressed by objective standards such as legislative enactments and state practices. *Id.* Second, we exercise independent judgment as guided by case law and our understanding of the constitutional text, history, meaning, and purpose. *Id.* In doing so, we consider the culpability of the category of offenders at issue "in light of their crimes and characteristics" weighed against the severity of the challenged punishment. *Id.* Plus, we examine the legitimate penal goals served by the sentencing practice. *Id.*

Several problems emerge when we embark on this two-step analysis in Ortiz's case. Initially, Ortiz inaccurately describes the sentencing practice at issue as a "mandatory minimum." *See State v. Propps*, 897 N.W.2d 91, 94 (Iowa 2017) (explaining although probation was not an option, forcible felony at issue carried no mandatory minimum sentence). The sentencing court could not suspend Ortiz's sentence, but he was immediately eligible for parole. *See* Iowa Code § 702.11(1) (defining forcible felony as any felonious assault), § 709.11(2) (categorizing assault with intent to commit sexual abuse causing bodily injury as a class "D" felony), § 907.3 (prohibiting deferred judgment or suspended sentence for forcible felony). *Propps* rejected the argument section 907.3 was categorically cruel and unusual as applied to juvenile offenders. 897 N.W.2d at 102. And *Atkins* rejected the notion intellectually disabled defendants would be "exempt from criminal sanctions." 536 U.S. at 318

Next, it is not clear who would fall into the category of offenders so intellectually disabled that any length of time in prison would be cruel and unusual

punishment and, particularly, whether Ortiz falls into that category. *See generally Moore v. Texas*, 586 U.S. \_\_\_, \_\_\_, 139 S. Ct. 666, 672 (2019) (Roberts, C.J., specially concurring) (highlighting continuing lack of clarity in how courts should enforce the *Atkins* requirements). *Atkins* cited "clinical definitions of mental retardation" as requiring both sub-average intelligence and "significant limitations in adaptive skills such as communication, self-care, and self-direction that became manifest before age 18." 536 U.S. at 318. Aside from the competency evaluation and his sentencing letters, Ortiz made no record in the district court concerning his intellectual function or his adaptive skills.

On this record, we cannot find a categorical violation. First, Ortiz is unable to show a national consensus, or even a state consensus, against imposing a mandatory prison sentence of any length for individuals with intellectual disabilities. *See* Paul Marcus, *Does Atkins Make A Difference in Non-Capital Cases? Should It?*, 23 Wm. & Mary Bill Rts. J. 431, 465 (2014) ("In spite of tremendous scientific support for the more careful treatment of offenders with low intelligence, and the Supreme Court's affirmation of that view, it seems as if *Atkins* simply is not considered very much—if at all—in non-death penalty prosecutions.").

Second, the sparse factual development here limits our ability to exercise independent judgment regarding the culpability of the category of offenders at issue. Specifically, we are unable to tell if Ortiz fits into the category of people with individual disabilities identified in *Atkins. See Hall v. Florida*, 572 U.S. 701, 723 (2014) ("Intellectual disability is a condition, not a number.").

Further, Ortiz has not established that incarcerating people with intellectual disabilities for an indeterminate term would serve no legitimate penological

purpose. Courts recognize four penological justifications: retribution, deterrence, incapacitation, and rehabilitation. *Oliver*, 812 N.W.2d at 646. The sentence at issue advances the State's interest in retribution and incapacitation by requiring an assailant with sexual motives to serve some amount of time in prison.

We reject Ortiz's categorical challenge under both the Eighth Amendment and article I, section 17 of the Iowa Constitution.

**AFFIRMED.**