# IN THE SUPREME COURT OF IOWA

No. 01 / 05-1798

Filed September 7, 2007

**STATE OF IOWA**,

Appellee,

vs.

**LORANT A. WELLS**,

Appellant.

---

Appeal from the Iowa District Court for Johnson County, L. Vern Robinson, Judge.

Defendant appeals from his conviction of sexual abuse in the third degree. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, J. Patrick White, County Attorney, and Anne Lahey, Assistant County Attorney, for appellee.

**HECHT, Justice.**

Lorant Wells appeals from his conviction of sexual abuse in the third degree, contending the district court erred in: (1) admitting, over Wells's hearsay and confrontation clause objections, evidence of statements made by a patient to a sexual assault nurse examiner, (2) failing to inquire into the alleged breakdown of Wells's relationship with his attorney, and (3) applying an incorrect legal standard when ruling on a motion for new trial. We conclude the error, if any, arising from the admission of the challenged evidence was harmless. We also conclude the district court applied the correct standard when ruling on the motion for new trial, and we preserve for a possible postconviction proceeding Wells's claim that the district court failed to adequately inquire into the claimed breakdown of the relationship between Wells and his lawyer.

## I. Background Facts and Proceedings.

On December 4, 2001, Iowa City police officers were dispatched to a residence to investigate a claim that L.M. had been sexually abused. The officers asked L.M.'s mother to take L.M. to University of Iowa Hospitals and Clinics for a sexual abuse examination. L.M.'s mother subsequently took L.M. to the hospital, where sexual assault nurse examiner Nicollet Markovetz conducted an examination.

Although she was initially reluctant to cooperate, L.M. eventually related her history to Markovetz. L.M. reported she was fourteen years old and had engaged in a consensual sexual relationship over a period of several months with Lorant Wells.[1] L.M. stated the last time she had sex with Wells was earlier that evening, and she came to the hospital because her parents required her to do so.

---

[1]Wells's birth certificate revealed that he was twenty-four years old at the time he engaged in the sex acts with L.M.

L.M. told Markovetz she had recently been experiencing intermittent pain in her lower right abdomen. A school nurse had given L.M. a pregnancy test the previous day, but the results were inconclusive. Markovetz administered another pregnancy test, which indicated L.M. was not pregnant.

Markovetz performed a gynecological examination, during which she collected, pursuant to a sexual assault protocol, vaginal smears and swabs. Markovetz also collected oral swabs. She placed the evidence collected from L.M. in a sexual assault kit, sealed it, and delivered it to the hospital's storage facility.

Three years later, in November 2004, an Iowa City police detective took "buccal swabs"[2] from Lorant Wells. The detective correctly affixed Wells's name to the swabs and placed them in an envelope bearing Wells's police department case file number, but entered the name of "Lamont Wells" on a related evidence form. In December 2004, the detective obtained L.M.'s kit from the hospital and delivered it, along with the swabs harvested from Wells, to the Iowa City police evidence custodian.

The custodian subsequently delivered both the kit and Wells's buccal swabs to a lab for testing. A DNA analyst found spermatozoa on L.M.'s vaginal smears and seminal fluid on one of L.M.'s oral swabs. The male DNA found on L.M.'s oral swab matched the DNA profile derived from Wells's buccal swabs.[3]

By a trial information filed on September 27, 2004, the State charged Wells with two counts of sexual abuse in the third degree, in violation of

---

[2]"Buccal swabs" are essentially long Q-tips used to collect DNA evidence from the mouth or other parts of the body.

[3]The DNA analyst opined that fewer than one in one hundred billion unrelated individuals would be expected to have the same profile.

Iowa Code sections 709.4(2)(*c*)(4) (2001) and 702.17, and failure to register as a sex offender, in violation of sections 692A.2(1), 692A.3(1), and 692A.7.[4]

LeAnn Heun represented Wells at the outset of the case. On December 22, 2004, Heun filed a motion to withdraw as Wells's attorney, which the court granted. Upon Wells's request, the court appointed Jeffrey Fields as Wells's new attorney.

In the spring and summer of 2005, the district court received six letters from Wells expressing dissatisfaction with Fields and requesting appointment of a different attorney. The court sent a copy of each letter to Fields.[5] After receiving a letter from Wells dated June 8, 2005, the court ordered Fields to have in-person contact with Wells and file a written report as to whether he would continue to represent Wells. The record contains no evidence that Fields ever filed such a report.

On August 2, 2005, the court received a letter from a person who claimed to be a friend of Wells expressing concern over Wells's situation. The letter inquired why Wells had "been waiting so long" for resolution of his case and why Wells's attorney had not taken "time to speak with . . . Wells in person." The court forwarded this letter to Fields.[6] The record does not document that the court made a further inquiry of Wells before trial as to either the requests for substitute counsel or the state of the lawyer-client relationship between Fields and Wells.

Fields appeared as Wells's counsel during the trial. Neither L.M. nor her mother testified. Over Wells's hearsay and Confrontation Clause objections, the district court received Markovetz's testimony recounting

---

[4]Upon the State's motion, the court later dismissed one count of sexual abuse as well as the count charging Wells with failure to register as a sex offender.

[5]The letters were received and forwarded by a judge other than Judge Robinson, who subsequently presided at the trial of this case.

[6]Again, it was not Judge Robinson who received and forwarded this letter to Fields.

L.M.'s out-of-court statement that she had sexual contact with Wells. The jury found Wells guilty of sexual abuse in the third degree.

Wells filed a motion for new trial alleging in relevant part that the verdict was contrary to the evidence and that the district court had erred in ruling upon various questions of law during the trial. The district court denied the motion during the sentencing hearing stating: "I've reviewed the presentence report and I've also reviewed the defendant's motion for a new trial. The grounds for the motion are rulings that I made at the time of the trial, and I stand by those prior rulings." The court filed a written judgment and sentence stating: "The defendant's motion for new trial is denied. The verdict was not contrary to the weight of the evidence." Wells was sentenced to an indeterminate term of imprisonment not to exceed ten years.[7]

On appeal, Wells reasserts his claim that Markovetz's testimony included inadmissible hearsay and violated his right to confront a witness against him under the Sixth Amendment of the United States Constitution and article I, section 10 of the Iowa Constitution. He also contends the district court failed to adequately inquire into the claimed breakdown of his relationship with Fields and applied an incorrect standard in overruling the motion for new trial.

## II. Scope of Review.

Our review of Wells's constitutional claim is de novo. *State v. Castenada*, 621 N.W.2d 435, 443 (Iowa 2001). Our review of Wells's contention that the district court failed to adequately inquire into the alleged breakdown of the attorney-client relationship is also de novo. *State v. Tejeda*, 677 N.W.2d 744, 749 (Iowa 2004). We review for errors at law

---

[7]The court also imposed, but suspended, a $1000 fine.

Wells's claim that the district court failed to apply the proper standard in ruling on the motion for new trial. Iowa R. App. P. 6.4.

### III. Admission of Markovetz's Testimony.

The Confrontation Clauses of the United States and Iowa Constitutions guarantee to Wells the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; Iowa Const. art. I, § 10. A testimonial out-of-court statement made by a declarant who is unavailable to testify is inadmissible if the defendant has not had an opportunity to cross-examine the declarant. *Crawford v. Washington,* 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365, 158 L. Ed. 2d 177, 194 (2004). Wells contends L.M.'s out-of-court statements identifying him as the person with whom she had sexual relations were testimonial and therefore inadmissible because L.M. was unavailable to testify and he had no opportunity to cross-examine her. Even if we assume, without deciding, that L.M.'s statements were testimonial, we find their admission was harmless beyond a reasonable doubt. *Cf. State v. Simmons*, 714 N.W.2d 264, 275 (Iowa 2006).

"[T]he admission of [hearsay] in violation of the Confrontation Clause does not mandate reversal." *State v. Newell,* 710 N.W.2d 6, 25 (Iowa 2006). Reversal is not required "if the State establishes that the error was harmless beyond a reasonable doubt." *Id.* (citing *State v. Brown,* 656 N.W.2d 355, 361 (Iowa 2003)). "To determine harmlessness, the inquiry 'is not whether, in a trial that occurred without the error, a guilty verdict surely would have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.'" *Id.* (quoting *Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S. Ct. 2078, 2081, 124 L. Ed. 2d 182, 189 (1993)). We conclude the guilty verdict in this case was surely unattributable to Markovetz's recounting of L.M.'s statement that she had sex with Wells. The jury was presented with DNA evidence that overwhelmingly established

Wells's guilt; in fact, the likelihood that someone other than Wells deposited the foreign DNA found in L.M.'s body is less than one in one hundred billion.

We reject Wells's contention that the reliability of the DNA evidence was called into serious question. The buccal swabs harvested from Wells were accurately marked with the correct spelling of Wells's name, "Lorant Wells," and were placed by the detective in an envelope bearing the police file number assigned to Wells's case. The same detective who harvested Wells's DNA on those swabs testified at trial, stating he correctly labeled the swabs and simply misspelled Wells's first name when he completed a related evidence form. The detective identified Wells at trial as the person from whom the swabs in question were harvested. We are consequently satisfied beyond a reasonable doubt under the circumstances of this case that the guilty verdict was surely unattributable to Markovetz's recounting of L.M.'s identification of Wells as the person with whom she had sexual relations. The verdict was surely attributable instead to DNA evidence that overwhelmingly established Wells's guilt. Accordingly, we conclude the State met its burden to prove the error, if any, resulting from the admission of L.M.'s statements through the testimony of Markovetz was harmless beyond a reasonable doubt.

Wells's contention that the district court committed reversible error by admitting L.M.'s statements in violation of the hearsay rule, Iowa Rule of Evidence 5.802, is also vulnerable to a prejudice analysis. Even if we assume, without deciding, that the hearsay rule prohibited the admission of L.M.'s statements, the error was harmless. Because the admission of the evidence was harmless under the standard applied to the claimed constitutional error, it was also harmless under the standard applied to admission of hearsay in violation of the hearsay rule. *State v. Martin*, 704

N.W.2d 665, 673 (Iowa 2005) (" 'In cases of nonconstitutional error, reversal is required if it appears the complaining party has suffered a miscarriage of justice or his rights have been injuriously affected.' " (quoting *State v. Moorehead*, 699 N.W.2d 667, 672 (Iowa 2005))).

## IV.  Motion for New Trial.

A court may grant a new trial pursuant to Iowa Rule of Criminal Procedure 2.24(2)(*b*)(6) when "the verdict is contrary to law or evidence." The Iowa Supreme Court has held a verdict is contrary to the evidence under this rule if it is "contrary to the weight of the evidence." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998).

Wells claims the district court did not apply the weight-of-the-evidence standard in ruling on the motion for new trial.  We disagree. Although the court did state during the sentencing hearing that it would "stand by" the rulings made during the trial, we believe that statement was directed to Wells's alternative claim in the motion for new trial that the district court erred in deciding certain questions of law before and during trial. In its written judgment and sentence, the district court expressly found that the verdict was not contrary to the weight of the evidence. Accordingly, we find no merit in Wells's claim that the court failed to apply the *Ellis* standard in this case.

## V.  Attorney-Client Relationship.

We next turn to Wells's claim that the district court erred in failing to adequately inquire into the lawyer-client relationship between Wells and Fields.  Judges who receive from a defendant a request for substitute counsel on account of an alleged breakdown in communication have a "duty of inquiry."  *Tejeda*, 677 N.W.2d at 749–50.  This duty stems from a defendant's Sixth Amendment right to counsel.  *Id.*  A complete breakdown in communication between an attorney and a defendant is sufficient cause

justifying the appointment of substitute counsel. *State v. Lopez*, 633 N.W.2d 774, 778–79 (Iowa 2001).

The State and Wells agree the record is inadequate for us to assess whether the district court made an adequate inquiry on this issue. As in *Tejeda*, there is no record as to whether the court ever addressed the defendant in person on this subject or whether Fields reported as directed by the court on the status of the relationship. *Tejeda*, 677 N.W.2d at 751. The record contains insufficient evidence as to whether there was a "complete breakdown in communication, and if so, its causes and duration."[8] *Id.* We therefore conclude the record is inadequate for us to rule on this issue, and we consequently preserve it for a potential postconviction proceeding.

## VI. Conclusion.

We conclude any error resulting from the admission of L.M.'s statements through Markovetz's testimony was harmless. We further conclude the district court applied the correct standard in ruling on Wells's motion for new trial. We preserve for possible postconviction proceedings Wells's claim that the district court failed to make an adequate inquiry into the allegation of a breakdown in the lawyer-client relationship between Wells and Fields.

**AFFIRMED.**

---

[8]To prove a "total breakdown," the defendant must show a " 'severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible.' " *Tejeda*, 677 N.W.2d at 752 (quoting *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002)).