# IN THE COURT OF APPEALS OF IOWA

No. 22-0530
Filed August 30, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAMES PETER RETHWISCH,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Allamakee County, Richard D. Stochl, Judge.

James Rethwisch appeals his conviction for assault with intent to commit sexual abuse. **JUDGMENT AND SENTENCE CONDITIONALLY AFFIRMED; RULING ON NEW TRIAL MOTION VACATED IN PART AND REMANDED.**

Kevin Stinn of Swartz Law Firm, PLLC, Waukon, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered en banc.

**AHLERS, Judge.**

James Rethwisch appeals his conviction for the crime of assault with intent to commit sexual abuse, in violation of Iowa Code section 709.11(3) (2019). He raises several issues, which we will address in turn after providing some factual background.

## I. Factual Background

In 2019, then sixty-three-year-old Rethwisch was drinking at a bar with three other men—Craig, Charlie, and Jake—and his adult niece, who we will refer to as Sonya.[1] After the bar closed, the five people went to Charlie's apartment for an afterparty where they continued to drink alcohol and smoked marijuana. Eventually, both Jake and Sonya retired to separate bedrooms, as they were both heavily intoxicated. This left Craig, Charlie, and Rethwisch in the kitchen. A little bit later, Rethwisch left the kitchen, telling Charlie he was going to lie down with his niece. Charlie did not view Rethwisch's suggestion as "weird" because Rethwisch was Sonya's uncle, and Charlie figured Rethwisch was staying overnight so no one had to drive.

Sometime later, Craig and Charlie heard Jake vomiting, so they went to check on him. Craig decided to check on Sonya as well. When Craig opened the door and looked in the bedroom where Sonya had gone, he saw Rethwisch jerk and noticed that Rethwisch was over the top of Sonya.[2] Craig left the bedroom

---

[1] Rethwisch's niece's name is not Sonya. We used a random-name generator that produced the name Sonya, which we will use to maintain the privacy of Rethwisch's niece.

[2] In describing Rethwisch's jerking motion, Craig described it as, "It seemed like, you know, if you were at—if you were in high school or something at your

door open and went to Charlie to report what he had seen. Charlie expressed disbelief and told Craig to go back and check. When Craig returned to the bedroom the door had been closed to the point that Craig had to turn the knob to reopen it. Upon opening the door a second time, he saw the same thing.

Craig again left the door open and returned to Charlie. This time, both of them returned to the bedroom to find the bedroom door closed again. They opened the door and flipped on the light. They saw Sonya lying flat on her back, unconscious and partially naked. Her shirt and bra were pulled up above her breasts, but below her neck, and her underwear and pants were pulled down around her ankles. Rethwisch was on top of her, and when the light was switched on, he rose to a vertical position while still on his knees. Charlie yelled at Rethwisch, and Rethwisch responded by throwing a punch at Charlie. Craig struck Rethwisch with a plastic guitar, and Rethwisch fled the apartment.

After Rethwisch fled, Sonya began to speak as if she had just regained consciousness. She asked what had happened. When told what had happened, she thanked Craig for what he had done.

Sometime later that morning, Rethwisch sent text messages to Sonya apologizing and asking for Sonya's forgiveness. Law enforcement was notified later that day. As part of the investigation, an officer had Sonya place a telephone call to Rethwisch while the officer recorded the call. During the call, Rethwisch stated, "I don't know if you took them off or I did," referring to Sonya's clothes, and

---

girlfriend's house, making out, and her parents come walking in on you, you jump kind of quick."

"I honestly didn't know who I was with," when Sonya asked if he thought she was someone else.

The law enforcement officer also interviewed Rethwisch. During the interview, Rethwisch expressed relief that Craig and Charlie stopped him when they did because he would have felt worse "if [he] would have had intercourse with [his] niece." Rethwisch also admitted that he intended to commit a sex act.

At trial, Rethwisch testified that he was bullied by the officer and led into saying what he had said, claiming the officer "was throwing things at me that I just hadn't really thought about, and basically I was getting tired of listening to him and I figured, basically, if I agreed with him, he'd shut up."

Additional facts will be discussed as needed.

## II. Sufficiency of the Evidence

Rethwisch's first challenge is to the sufficiency of the evidence supporting his conviction.

### A. Standard of Review

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). When a jury has delivered a verdict, we are bound by it if it is supported by substantial evidence. *Id.* Substantial evidence is evidence sufficient to convince a rational factfinder that the defendant is guilty of the crime beyond a reasonable doubt. *Id.* In assessing a sufficiency-of-the-evidence challenge on appeal, we view all evidence in the light most favorable to the State. *Id.*

### B. Elements of the Offense

Three jury instructions inform our discussion of Rethwisch's challenge. The

first of these instructions is the marshaling instruction,[3] given to the jury as instruction number seventeen. It stated:

> The State must prove both of the following elements of assault with intent to commit sexual abuse:
> 1. On November 25, 2019, James Rethwisch committed an act which was intended to cause pain or injury or result in physical contact which would be insulting or offensive to another person or place another person in fear of an immediate physical contact which would have been painful, injurious, insulting or offensive to the other person.
> 2. Defendant committed the act with the intent to commit sexual abuse as that term is described in instruction number eighteen[.]
> If the State has failed to prove either of the above elements, defendant is not guilty of the offense of assault with intent to commit sexual abuse and you shall consider the offense of Simple Assault as set forth in instruction number twenty.

Jury instruction eighteen stated:

> Any "sex act" between persons, as defined in instruction number nineteen, is sexual abuse by either of the persons when the act is performed with the other person in any of the following circumstances:
> 1. The act is done by force or against the will of the other. If the consent or acquiescence of the other is procured by threats of violence toward any person or if the act is done while the other is under the influence of a drug inducing sleep or is otherwise in a state of unconsciousness, the act is done against the will of the other.
> 2. Such other person is suffering from a mental defect or incapacity which precludes giving consent, or lacks the mental capacity to know the right and wrong of conduct in sexual matters.

Jury instruction nineteen stated:

> Concerning element number one of instruction number eighteen, "sex act" means any sexual contact:
> 1. By penetration of the penis into the vagina.
> 2. Between the mouth of one person and the genitals of another.
> 3. Between the genitals of one person and the genitals of another.

---

[3] "A 'marshaling instruction' is a jury instruction that brings together and effectively orders all elements the party with the burden of proof must establish in order to prevail." *State v. Hernandez*, No. 19-1764, 2020 WL 4201800, at *1 n.2 (Iowa Ct. App. July 22, 2020).

    4. Between the finger or hand of one person and the genitals of another.
    You may consider the type of contact and the circumstances surrounding it in deciding whether the contact was sexual in nature.

Although Rethwisch unsuccessfully objected to nuances of the marshaling instruction before the district court, he does not repeat the challenges here. So, the instructions become the law of the case for purposes of assessing his sufficiency-of-the-evidence challenge. *See State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020) ("Jury instructions, when not objected to, become the law of the case for purposes of appellate review for sufficiency-of-evidence claims."); *State v. Thomas*, No. 19-0379, 2020 WL 5651563, at *3–4 (Iowa Ct. App. Sep. 23, 2020) (treating the instructions as the law of the case on a sufficiency-of-the-evidence challenge when the defendant objected to the instructions at trial but did not challenge the instructions on appeal).

## C.    Analysis

Rethwisch raises two sufficiency challenges. First, he contends the evidence was insufficient to establish that he committed an assault—implicating the first element listed in the marshaling instruction. Second, he contends the evidence was insufficient to establish that he acted with intent to commit sexual abuse—implicating the second element listed in the marshaling instruction.

The primary themes of Rethwisch's argument are that Sonya could not recall what happened in the bedroom and no one saw him assault Sonya. While this may be true, it ignores a great deal of other direct and circumstantial evidence. Direct and circumstantial evidence are equally probative. *State v. Ernst*, 954 N.W.2d 50, 57 (Iowa 2021). Likewise, "[j]uries must necessarily make inferences

when finding facts based on circumstantial evidence." *Id.* at 59. Those inferences can be stacked, so long as the ultimate fact finding is based on evidence in the record rather than speculation. *Id.*

So, we look at the direct and circumstantial evidence. Based on the evidence presented, a reasonable juror could conclude the following. Rethwisch was found on top of Sonya multiple times while she was unconscious with her shirt and bra pulled up to her neck with her breasts exposed and her pants and underwear pulled down around her ankles, exposing her genitals. A rational juror could conclude that Rethwisch, as the only conscious person in the room, was the one responsible for moving Sonya's clothes to reveal her breasts and genitals. This is evidence of an assault, as a rational juror could conclude that Rethwisch had to have engaged in insulting or offensive contact with the unconscious Sonya in order to move her clothes in such a manner. This is also evidence of intent to perform a sex act, which, when performed upon an unconscious Sonya, would constitute intent to commit sexual abuse. *See* Iowa Code § 709.1(1) (defining "sexual abuse" to be a sex act performed on another person that is "in a state of unconsciousness"); *State v. Killings*, No. 09-0739, 2010 WL 3894161, at *4 (Iowa Ct. App. Oct. 6, 2010) (collecting cases in which evidence of partially removed clothing that exposed the victim's breasts or genitals was sufficient to establish intent to commit sexual abuse).

And there's more. When Craig opened the door to the bedroom, Rethwisch jerked in a manner Craig described as the way a person reacts when caught doing something the person wouldn't want to be caught doing. Also, the first two times Craig checked on Sonya and found Rethwisch on top of her, someone closed the

bedroom door after Craig left it open. A rational juror could conclude that Rethwisch was the only conscious person in the room, so he is the one who closed the door and he did so to try to hide what he was doing to Sonya. The third time he was caught in this incriminating position, the lights were flipped on, revealing Rethwisch on top of an exposed and unconscious Sonya. Rethwisch responded to being yelled at by throwing a punch. A rational juror could conclude this is not the reaction of a person engaged in innocent behavior.

There is also the evidence of Rethwisch's actions and statements after his actions in the bedroom. He sent a text apologizing to Sonya and asking her forgiveness. A rational juror could conclude that Rethwisch did so because he had assaulted Sonya with the intent to commit sexual abuse. Additionally, Rethwisch admitted to the officer that he acted with intent to commit sexual abuse. While Rethwisch testified that he made that admission because he felt bullied and wanted the interrogation to stop, a rational juror could accept Rethwisch's admission as true rather than accepting his trial testimony. *See State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999) ("[I]t is for the jury to judge the credibility of the witnesses and weigh the evidence.").

Rethwisch contends this evidence, which can be viewed as incriminating, could be viewed a different and innocent way. But this contention disregards our role in assessing a sufficiency-of-the evidence challenge. On appellate review of such challenges, it is not our place "to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)).

Instead, we must view the evidence "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *Schiebout*, 944 N.W.2d at 670 (quoting *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014)). Viewing the evidence in this light, we find substantial evidence supporting the verdict, and we reject Rethwisch's challenges to the sufficiency of the evidence.

## III. Closing Argument

Rethwisch next argues "the jury improperly considered the State's closing argument as evidence that the defendant committed an assault." We are not clear on what Rethwisch is arguing. As near as we can determine, this issue is merely a repackaging of his sufficiency-of-the evidence challenge, which we reject for the reasons just discussed.

To the extent Rethwisch is attempting to claim some other error during closing argument, we decline to address the issue because Rethwisch failed to preserve it. To preserve error based on events occurring during closing argument, a party must raise the issue before the case is submitted to the jury. *See Kinseth v. Weil-McLain*, 913 N.W.2d 55, 67 (Iowa 2018) ("[W]e require prompt objection to discourage the wait-and-see approach, in which aggrieved parties refrain from objecting to remarks in a jury argument until after the verdict has been rendered."). Rethwisch did not do so, so he did not preserve error on this issue.

## IV. Motion for New Trial—Weight of the Evidence

Rethwisch's next contention is that the district court applied the wrong standard to the part of his new-trial motion in which he claimed the verdict was contrary to the weight of the evidence. He claims the district court applied a

sufficiency-of-the-evidence standard rather than a weight-of-the-evidence standard. "[W]e review a claim that the district court failed to apply the proper standard in ruling on a motion for new trial for errors at law." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016) (citing *State v. Wells*, 738 N.W.2d 214, 218 (Iowa 2007)).

When reviewing a motion for new trial claiming the verdict is contrary to the weight of the evidence, the district court considers "whether more 'credible evidence' supports the verdict rendered than supports the alternative verdict." *Id.* "The question for the court is not whether there was sufficient credible evidence to support the verdict rendered or an alternative verdict, but whether 'a greater amount of credible evidence' suggests the verdict rendered was a miscarriage of justice." *Id.* (quoting *State v. Ellis*, 578 N.W.2d 655, 658–59 (Iowa 1998)). In this case, the record shows the district court did not apply this weight-of-the-evidence standard when addressing Rethwisch's motion for new trial as will be further explained later.

However, the State contests error preservation. The State contends that, even if Rethwisch's motion made a weight-of-the evidence claim, the district court actually applied a sufficiency-of-the-evidence standard. The State argues that, if Rethwisch wanted the district court to apply the weight-of-the-evidence standard, he needed to call the oversight to the district court's attention in order to preserve error.

Faced with similar error-preservation arguments, our court has reached varied results. *Compare State v. Sallis*, No. 17-1842, 2019 WL 325019, at *3 n.4 (Iowa Ct. App. Jan. 23, 2019) ("The State contends Sallis did not preserve error

because his 'vague and standardless' motion for new trial 'did not clearly request a ruling on the correct standard.' The State also suggests Sallis had a burden to inform the court it applied the wrong standard. We conclude Sallis preserved error by citing [Iowa Rule of Criminal Procedure] 2.24(2)(b)(6) in his new-trial motion and arguing at the hearing the verdicts were 'contrary to the weight' of the evidence."), *with State v. Clark*, No. 06-0345, 2007 WL 2964191, at *2 (Iowa Ct. App. Oct. 12, 2007) ("Clark made no challenge to the standard applied [to his motion for new trial based on the weight of the evidence] by the district court. Because he did not raise such an objection, Clark did not preserve any alleged error on this issue, and there is nothing for us to review.").

Having considered the conflicting decisions on this issue, we conclude that the better course is to require a defendant to alert the district court when it applies the incorrect standard in order to preserve error. We reach this conclusion based on several considerations. First, it is a fundamental part of our error-preservation doctrine that, in order to preserve error on an issue, a party must raise the issue and obtain a ruling on it. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). The reason for requiring a party to not only raise an issue, but to also obtain a ruling on it, is that "[i]t is not a sensible exercise of appellate review to analyze facts of an issue 'without the benefit of a full record or lower court determination[ ].'" *Id.* (alteration in original) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 538 (1992)). As a result, when a district court fails to rule on a properly raised issue, the party

raising the issue "must file a motion requesting a ruling in order to preserve error for appeal." *Id.*

Second, to the extent our rules of criminal procedure do not provide a procedural vehicle for bringing this issue to the district court's attention, the lack of a rule-based method does not excuse a failure to bring the issue to the district court's attention. This is because "[t]here is no procedural rule solely dedicated to the preservation of error doctrine." *Id.* at 539. As a result, "a party may use any means to request the court to make a ruling on an issue." *Id.* So, even if there is no available rule-based method for bringing the court's failure to rule on an issue to the court's attention, a "party must still request a ruling from the district court to preserve error for appeal on an issue presented but not decided." *Id.*

Third, requiring a defendant aggrieved by the district court's failure to apply the correct standard to bring that failure to the court's attention saves time and judicial resources. When a defendant moves for new trial claiming the verdict is contrary to the evidence, the defendant asks the district court to apply the weight-of-the-evidence standard to decide whether to grant a new trial. If the district court does not apply that standard, it makes little sense to allow a defendant to remain silent in the face of the error or oversight only to then incur the time and expense of an appeal to seek the very same relief the defendant could have received immediately had the court been alerted to the error. After all, when a defendant successfully points out on appeal that the district court did not apply the correct standard, the remedy the defendant receives is for us to remand the case to the very same judge with directions to apply the correct standard. This same outcome—calling the error or oversight to the district court's attention and getting

the court to apply the correct standard—could be achieved more easily and efficiently by simply requiring the defendant to call the error to the district court's attention when the mistake is made. Furthermore, getting the district court to apply the correct standard earlier rather than later (after an appeal) lends itself to a sounder ruling, as the details of the case will be much fresher in the court's mind right after trial than months later following an appeal.

We are also not persuaded by the notion expressed in the special concurrence that we will consider error preserved in the circumstances here because the defendant would be required to bring the error to the district court's attention close in time to sentencing, thus running the risk of irritating the sentencing judge. This rationale may make sense in the context of sentencing errors. *See, e.g.*, *State v. Cooley*, 587 N.W.2d 752, 754 (Iowa 1998) ("It strikes us as exceedingly unfair to urge that a defendant, on the threshold of being sentenced, must question the court's exercise of discretion or forever waive the right to assign the error on appeal."). But this rationale makes little sense in the context of alerting the district court to the misapplication of new-trial standards. Many bases for requesting a new trial require criticism of the district court's actions during trial. *See, e.g.*, Iowa R. Crim. P. 2.24(2)(b)(5) ("When the court has misdirected the jury in a material matter of law, or has erred in the decision of any question of law during the course of the trial . . . .", (7) ("When the court has refused properly to instruct the jury."), (9) ("When from any other cause the defendant has not received a fair and impartial trial."). Nevertheless, we still require parties to raise them and receive a ruling on them in order to preserve error, even though the new trial motion is frequently addressed at or near the time of sentencing. We

need to have enough confidence in our district court judges to believe their sentencing decisions would not be negatively impacted if they are alerted to an error in their new-trial analysis. In fact, we trust that many judges would welcome having the mistake called to their attention so it can be fixed earlier rather than later (i.e., after appeal).

After consideration, we conclude that the better course is to require a defendant to alert the district court that it applied the incorrect standard when addressing the new-trial motion in order to preserve the issue for appeal. That said, we recognize that our cases that find error preserved in this context may have misled or confused counsel. So, for purposes of this case, we will consider error preserved and proceed to a discussion on the merits, but give notice that, going forward, a defendant will be required to bring the application of the incorrect standard to the court's attention in order to preserve error.

As a careful reader will notice, the conflict in our cases remains unresolved, as we have split four to four on this issue. While we will have to wait for a future case or further review to resolve the conflict in our cases, our hope is that practitioners take note of the possibility that this conflict will be resolved in the future by finding error is not preserved under these circumstances and will call this type of error to the district court's attention if it occurs. Even if the special concurrence's position wins the day on a future case or upon further review, no harm would come from calling this type of error to the district court's attention because it provides the opportunity to fix the problem sooner rather than later.

Turning to the merits of Rethwisch's claim, we conclude the motion provided sufficient detail to put the district court on notice that he was arguing that the verdict

was contrary to the weight of the evidence. So, the question becomes whether the district court applied the weight-of-the-evidence standard.

We conclude the district court did not apply the correct standard. As previously noted, applying the weight-of-the-evidence standard involves assessing credibility issues and determining whether more credible evidence supports the verdict rendered than supports an alternative verdict. *Ary*, 877 N.W.2d at 706. That did not happen here. The district court based its ruling on findings that "[t]here is more than enough evidence in the record to support the jur[y]'s verdict" and there "is enough evidence for the jury to find [Rethwisch's] intentions were to commit sexual abuse." These are sufficiency-of-the-evidence findings not weight-of-the-evidence findings. *See id.* at 706–07 (finding similar types of findings to be applying the sufficiency-of-the-evidence standard rather than the weight-of-the-evidence standard). We are unable to find anywhere in the district court's ruling where it applied the weight-of-the-evidence standard. As a result, we are required to vacate that part of the district court's ruling on the new-trial motion and remand for consideration of the proper standard. *See State v. Brumfeld*, No. 21-0011, 2022 WL 951033, at *3–4 (Iowa Ct. App. Mar. 30, 2022) (granting the remedy of vacation of the new-trial ruling when the wrong standard is applied and remanding for consideration of the correct standard).

**V.     Motion for New Trial—Timing of Submission to Jury for Deliberation**

Rethwisch next claims that the district court erred by denying the part of his new-trial motion challenging the submission of the case to the jury for deliberation at 2:45 p.m. on a Friday afternoon. He claims that doing so rushed the jury into a verdict that it returned forty-seven minutes later.

We find this issue unpreserved for our review. Rethwisch raised no objection to the timing of the submission of the case to the jury for deliberation until after the jury returned a guilty verdict. This was too late to preserve error. Our supreme court has found that error was not preserved to challenge a verdict based on alleged jury communications observed prior to closing argument because no objection was raised before the case was submitted for deliberation. *State v. Wells*, 629 N.W.2d 346, 356–57 (Iowa 2001). The *Wells* court gave this reasoning for its error-preservation ruling:

> If Wells would have raised the issue to the district court prior to the time the jury commenced deliberations, the court would have been able to consider the claim and, if necessary, taken steps to alleviate any prejudice that may have occurred. Instead, Wells waited for a verdict, and when it was unfavorable, he then complained. In essence, Wells was gambling, and we do not reward those who make losing bets on their own convictions.

*Id.* (internal citations omitted). This reasoning applies here. By not objecting to the timing of the submission of the case to the jury for deliberations, Rethwisch failed to preserve error to challenge such timing on appeal.

## VI.  Motion for New Trial—Newly Discovered Evidence

Rethwisch's final contention is that the district court erred by denying his motion for new trial based on newly discovered evidence. Iowa Rule of Criminal Procedure 2.24(2)(b)(8) permits the court to grant a new trial upon the defendant's discovery of important and material evidence after the verdict. *State v. Uranga*, 950 N.W.2d 239, 243 (Iowa 2020). "We review the denial of a motion for a new trial based on newly discovered evidence for abuse of discretion." *State v. Cahill*, 972 N.W.2d 19, 27 (Iowa 2022) (citing *Uranga*, 950 N.W.2d at 243).

> A motion for new trial on the basis of newly discovered evidence should be granted only where the evidence "(1) was discovered *after* the verdict, (2) could not have been discovered earlier in the exercise of due diligence, (3) is material to the issues in the case and not merely cumulative, and (4) probably would have changed the result of the trial."

*Uranga*, 950 N.W.2d at 243 (quoting *State v. Smith*, 573 N.W.2d 14, 21 (Iowa 1997)).

The evidence Rethwisch claims to be newly discovered is testimony from his sister. At Rethwisch's sentencing hearing, his sister (Sonya's aunt) testified that Sonya recently told her about a family wedding Sonya had attended eight to ten years earlier. Sonya told her aunt that, at that wedding, "[Sonya] was so drunk that she had gotten naked, left her clothes in a pile in the corner[,] and crawled into bed between [Sonya's mother and father]." Rethwisch argues that, had this evidence been known and presented at trial, it would have shown a habit of Sonya of taking her own clothes off when intoxicated and would have impacted the jury's verdict.

The district court denied the motion for new trial, finding that Rethwisch's evidence fails two of the *Uranga* prongs. Namely, it could have been discovered prior to trial, and it was unlikely to change the outcome of the case given Rethwisch's own admissions and the eyewitness testimony. *See id.*

We find no abuse of discretion in the district court's ruling. While we echo the district court's reasoning for denying the motion, we add an additional point supporting the conclusion that this evidence would not probably change the outcome of the trial. That point is that this testimony of how Sonya acted one time while intoxicated nearly a decade earlier would face a number of evidentiary

obstacles that makes it unlikely the evidence would even be admitted. If not admitted, of course, the evidence could not change the outcome of the trial. But, even if admitted, we, like the district court, find it unlikely that the evidence would change the outcome given Rethwisch's admissions and the eyewitness evidence of the events resulting in the conviction. Therefore, we reject Rethwisch's challenge based on the denial of the newly-discovered-evidence portion of his new-trial motion.

**VII.    Conclusion**

We conclude Rethwisch's conviction is supported by substantial evidence. We decline to address his challenges based on events surrounding closing argument or the timing of when the case was submitted to the jury for deliberation, as Rethwisch failed to preserve error on those issues. We conclude the district court did not abuse its discretion in refusing to grant a new trial based on newly discovered evidence. As a result, we conditionally affirm the judgment and sentence.

Although we conditionally affirm the judgment and sentence, we vacate the part of the district court's ruling on Rethwisch's motion for new trial addressing Rethwisch's contention that the verdict was contrary to the evidence. We remand the case to the district court to apply the weight-of-the-evidence standard on that issue. The only issue to be resolved on remand is for the court to rule on that part of Rethwisch's new-trial motion, which requires application of the weight-of-the-evidence standard. If, following remand and application of the proper standard, the court concludes the verdict is contrary to the weight of the evidence, the court shall grant a new trial and proceed accordingly. If the court concludes the verdict

was not contrary to the weight of the evidence, the judgment and sentence shall remain affirmed.

**JUDGMENT AND SENTENCE CONDITIONALLY AFFIRMED; RULING ON NEW TRIAL MOTION VACATED IN PART AND REMANDED.**

Schumacher, Chicchelly, and Buller, J.J., join this opinion.

**TABOR, Judge** (specially concurring).

Our court finds itself in the unusual position of being evenly split with four judges on each side of a narrow, but nagging question. How far does a defendant have to go to preserve error on a motion for new trial alleging the verdict is against the weight of the evidence? Unlike our colleagues who join the main opinion, we believe that Rethwisch went far enough by citing Iowa Rule of Criminal Procedure 2.24(2)(b)(6) and advocating the correct standard. Other than that fine point, we concur with Judge Ahlers's thorough opinion, including the outcome.

The main opinion notes that we have conflicting decisions on this error-preservation question. The conflict is overstated. True, we have decisions going different directions. But they can be reconciled.

In *State v. Clark*, our court declined to reach the defendant's claim that the district court denied his new-trial motion without deciding whether the verdict was contrary to the weight of the evidence under the *Ellis* standard. No. 06-0345, 2007 WL 2964191, at *2 (Iowa Ct. App. Oct. 12, 2007); *see State v. Ellis*, 578 N.W.2d 655, 658–59 (Iowa 1998). There, the district court asked Clark's counsel whether it had addressed all of his motion; counsel said that he "believe[d] so" and then echoed the court's "sufficient evidence" standard complained about on appeal. *Clark*, 2007 WL 2964191, at *2. Because Clark did not urge the correct standard, we found he waived error.[4] *Id.*

---

[4] Our supreme court took a similar route in *State v. Thompson*, 836 N.W.2d 470 (Iowa 2013). It found that error was not preserved because Thompson's counsel never cited rule 2.24(2)(b)(6) or *Ellis* in his posttrial motion or during the hearing on that motion in district court. *Thompson*, 836 N.W.2d at 491.

In *State v. Sallis*, the scenario was different. No. 17-1842, 2019 WL 325019, at \*4 (Iowa Ct. App. Jan. 23, 2019). The defense cited the right rule in its motion and argued the weight-of-the-evidence standard at the hearing. *Id.* at \*3 n.4. It was the State in *Sallis* that provided a confusing recitation of the standard, and the court was just as unclear in its ruling. *Id.* at \*4. On those facts, we conditionally affirmed and remanded for the court to apply the weight-of-the-evidence standard. *Id.* at \*5.

We find this case aligns more with *Sallis* than *Clark*. Like Sallis, Rethwisch cited rule 2.24(2)(b)(6) in his motion for new trial; argued the correct standard in that motion, even citing caselaw; and urged the correct standard at the hearing. When those conditions are met, neither our court nor the supreme court has required the defendant to take an extra step of calling out the district court's use of the wrong standard. *See State v. Ary*, 877 N.W.2d 686, 707 (Iowa 2016); *State v. Root*, 801 N.W.2d 29, 31 (Iowa Ct. App. 2011). We would leave for some future case to decide whether error would be preserved if one or more of these conditions were not met.

But that said, we share our colleagues' frustration with the resources expended to ensure compliance with the twenty-five-year-old *Ellis* standard. In fact, more than a decade ago, we published *Root* to emphasize the need for courts to use "correct terminology" to resolve "any lingering ambiguity" and "instill confidence in the ruling." 801 N.W.2d at 31 ("While we place great confidence in the district court's experience in utilizing the differing standards, we have repeatedly remanded to make certain the proper standard was applied and reflected in its ruling.").

So we recognize the benefit of a party bringing the use of the wrong standard to the court's attention—permitting the court to correct the mistake on the spot rather than waiting through the appeal process. But we do not find that the failure to do so falls solely on the defendant's shoulders as an error-preservation requirement. The main opinion cites the familiar error preservation rules from *Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002). But *Senecaut* requires the appellant to seek a ruling on an "unresolved" issue, not to reengage the district court on an issue that the court has resolved using the wrong test. Error preservation does not have that many layers. *See generally State v. Crawford*, 972 N.W.2d 189, 198 (Iowa 2022) ("When we speak of error preservation, all we mean is that a party has an obligation to raise an issue in the district court and obtain a decision on the issue so that an appellate court can review the merits of the decision actually rendered.").

We recognize it is unfair to fault a district court for "failing to rule correctly on an issue it was never given the opportunity to consider." *See Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 28 (Iowa 2005). But we don't perceive that unfairness in this situation where Rethwisch properly framed the question, yet the court applied the wrong standard.

We also note that rulings on new-trial motions often occur at the same hearing as sentencing, as happened here. Yet we don't require defendants to identify sentencing errors to the district court to preserve them for review. *See State v. Boldon*, 954 N.W.2d 62, 70 (Iowa 2021). For example, a challenge to the district court's failure to state reasons for the sentence is not waived when defendant does not alert the court to its omission. *State v. Marti*, 290 N.W.2d 570,

589 (Iowa 1980). Granted, ruling on the new-trial motion is a step removed from sentencing. But defendants would still be "on the threshold of being sentenced" when their counsel would be expected to question whether the district court was correctly applying the *Ellis* standard. *See State v. Cooley*, 587 N.W.2d 752, 754 (Iowa 1998). It's not a matter of fearing a district court judge would be irritated by a party pointing out a perceived error. Rather, like sentencing, the district court rules on the new trial motion after both parties have urged their positions; there is no set procedure for more objections. *See State v. Thomas*, 520 N.W.2d 311, 313 (Iowa Ct. App. 1994). Still, as our court did in *Thomas*, we would encourage prosecutors and defense counsel to alert the court to any claim of error that "could avoid a costly and lengthy appeal." *Id.* at 313 n.1. "It would also be welcome by trial judges, who strive to perform their duties properly within the law." *Id.*

In sum, we would find Rethwisch preserved error because he cited the right rule and urged the proper standard both in his motion for new trial and at the hearing. Our case law requires no more. On the merits, we all agree that the district court applied the incorrect standard when deciding Rethwisch's motion under rule 2.24(2)(b)(6). On remand, the court must apply the weight-of-the-evidence standard.

Bower, C.J., Greer, and Badding, J.J., join this special concurrence.