# IN THE COURT OF APPEALS OF IOWA

No. 24-1040
Filed October 1, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TAYLOR MICHAEL RUTLEDGE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Harrison County, Eric J. Nelson,

Judge.


        The defendant appeals his conviction for first-degree sexual abuse.

**AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Melinda J. Nye (argued),

Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Sheryl Soich (argued), Assistant

Attorney General, for appellee.


        Heard at oral argument by Tabor, C.J., and Greer and Buller, JJ.

**TABOR, Chief Judge.**

Taylor Rutledge appeals his conviction of first-degree sexual abuse for his assault on a three-year-old child, O.A. At trial, the district court allowed a nurse practitioner with the child advocacy center and O.A.'s mother to recount out-of-court statements by the child identifying Rutledge as the perpetrator. Rutledge argues the statements to the nurse practitioner violated his federal right to confront his accuser. Rutledge also contends the child's statements to both the nurse practitioner and the mother violated his right to face-to-face confrontation under the Iowa Constitution as described in *State v. White*, 9 N.W.3d 1 (Iowa 2024). But we need not address either substantive claim because any error was harmless. Rutledge confessed that he anally "raped" O.A. while babysitting. And the State presented ample physical evidence that Rutledge inflicted severe injuries, which required O.A. to undergo general anesthesia and surgery. Thus, we affirm the conviction.

## I. Facts and Prior Proceedings

In December 2024, O.A. had just turned three. He and his mother Ashley lived with her fiancé Zach and several friends, including Hunter, Rutledge, and Rutledge's girlfriend Emily. Ashley testified that O.A.'s interactions with Rutledge up to that time were playful, though O.A. had only been alone with Rutledge once.

One evening, Rutledge agreed to babysit O.A. for an hour while Ashley and Emily went to the gym. Hunter and Zach were not home. When Ashley and Emily left, O.A. was playing in the living room, and Rutledge was on the couch. After being sidetracked for about an hour, they came back to drop something off, and Ashley checked on O.A., who was playing in his upstairs bedroom. She also asked

Rutledge if he was still okay with watching O.A. so she and Emily could go to the gym, and Rutledge agreed again.

When Ashley and Emily arrived at the gym, it was locked. So after about twenty minutes, they returned home. Rutledge met them at the door and claimed O.A. was crying because Rutledge "put him in time-out for not eating." O.A. was lying on his stomach on the couch, upset and crying. Ashley recalled O.A. saying Rutledge "had hurt him," to which Rutledge said, "No, buddy, I didn't hurt you."

Ashley picked up O.A. and took him to the living room. With Rutledge out of the room, O.A. told his mother that Rutledge "put his pee-pee in me." Ashley noticed O.A. was no longer wearing a diaper, though he didn't often take off his own diaper. She pulled down O.A.'s pants, looked at his bottom, and found three tears on his anus. After taking O.A. to her bedroom and locking the door, Ashley called Zach to come home. They then called police and took O.A. to the emergency room. There, ER providers and law enforcement officers instructed Ashley to take O.A to a child advocacy center in Omaha the next day. Meanwhile, she had instructions to keep his bottom clean and dry. Ashley recalled O.A. was unable to sit down and cried while going to the bathroom.

At the child advocacy center, O.A. underwent a forensic interview followed by pediatric nurse practitioner Mary Ellwanger's examination. Ellwanger testified that the center has staff "specifically trained as forensic interviewers" to "talk with children" about allegations of abuse. In contrast, her examination was "similar to a doctor's office checkup," and meant to "ensure that the child is safe and healthy," and included a physical exam and a conversation with the child about why he was

being seen. She also testified that law enforcement "requested an evidence collection kit," which involved using swabs to collect samples from O.A.

Over Rutledge's objections, Ellwanger also testified that she obtained a complete medical history and then asked about "specific touching to his body" to determine "what testing would be completed, [and] where to look for injury." In part, she asked about sexual contact to determine whether sexually transmitted infection (STI) testing was appropriate. According to Ellwanger, the perpetrator's identity was important to determine what kind of testing was needed. She also testified that knowing the identity of the perpetrator helped ensure that the child was not returning to an unsafe environment.

During the medical examination, Ellwanger asked O.A. if someone had touched his butt, and O.A. responded, "Taylor." When asked "what did Taylor touch to his butt," O.A. answered "his pee-pee." The nurse practitioner next asked "if he had any owies when that happened" or bleeding. O.A. said he did have "owies" and "got blood" on his clothes.

Ellwanger then performed a physical exam, noting O.A.'s anus had three lacerations with bruising and swelling. She also took swabs for testing and evidence collection. Two days later, O.A. returned for a follow-up appointment, and Ellwanger referred him to a children's hospital for surgery. O.A.'s pediatric surgeon testified that O.A. received a general anesthetic to undergo repair of the lacerations and for an examination of his rectum and lower colon to ensure there were no other injuries. Testing for STIs was positive for chlamydia, which Ellwanger said is unlikely to appear in children of that age absent sexual contact.

The diaper Ashley brought to the ER was also collected as evidence and found to contain blood and seminal fluid.

David Hendrix, a special agent with the Iowa Division of Criminal Investigation (DCI), interviewed Rutledge a few weeks later. At trial, the jury watched the video recording of the interview. At first, Rutledge said he didn't remember what happened that day. But eventually he confessed that he took O.A. to his bedroom and "raped him" while "on his bed." When Hendrix asked if he used his penis, Rutledge answered, "Yeah." Hendrix asked, "How long did that go on for?" Rutledge answered, "Not long." Rutledge explained his actions saying: "I had just a huge amount of rage toward [O.A.] for no reason. I don't know what he did. . . . I had hatred towards him for nothing."

The State charged Rutledge with first-degree sexual abuse, in violation of Iowa Code section 709.2 (2024), a class "A" felony. The court instructed the jury that to find Rutledge guilty of first-degree sexual abuse, it had to find:

1. . . . Rutledge performed a sex act with O.A.
2. . . . Rutledge performed the sex act while O.A. was under the age of 14 years old.
3. . . . During the commission of sexual abuse, [Rutledge] caused O.A. a serious injury.

The court's definition of "sex act" included "penetration of the penis into the. . . anus" and sexual contact "between the genitals of one person and the. . . anus of another." It defined "serious injury" as one "that requires surgical repair and necessitates the administration of general anesthesia."

At trial, O.A. did not testify. Instead, the State offered O.A.'s identification of Rutledge as the perpetrator through the testimony of Ashley and Ellwanger. Rutledge objected that O.A.'s statement to his mother that Rutledge "put his pee-

pee in me" was hearsay and violated the confrontation clause. The court found the statement was admissible as an excited utterance[1] and did not violate the confrontation clause because it was nontestimonial.[2] During Ellwanger's testimony, Rutledge again objected that O.A.'s statements were hearsay and violated his confrontation rights. The court found the statements met the medical treatment exception to hearsay.[3] The court also found those statements were nontestimonial. Rutledge chose not to testify.

The transcript shows that the jury deliberated less than fifteen minutes before finding him guilty of first-degree sexual abuse. The district court sentenced Rutledge to life in prison without parole. Iowa Code § 902.1. Rutledge appeals.

## II.    Scope and Standards of Review

Although we review hearsay rulings for errors at law, *State v. Sievers*, 20 N.W.3d 203, 208 (Iowa 2025), confrontation claims are constitutional and reviewed de novo. *State v. Dessinger*, 958 N.W.2d 590, 597 (Iowa 2021).

---

[1] Excited utterances—statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused"—are exceptions to the rule excluding hearsay. Iowa R. Evid. 5.803(2).

[2] If out-of-court statements are testimonial, they are inadmissible against the accused. *In re J.C.,* 877 N.W.2d 447, 452 (Iowa 2016). But if they are nontestimonial, the confrontation clause does not prevent their admission. *Id.* In short, a statement is nontestimonial when it "is not procured with a primary purpose of creating an out-of-court substitute for trial testimony." *See Michigan v. Bryant*, 562 U.S. 344, 358 (2011).

[3] Such statements are exempted from the rule against hearsay when they are "made for—and reasonably pertinent to—medical diagnosis or treatment" and explain "medical history, past or present symptoms or sensations, or the inception or general cause of symptoms or sensations." Iowa R. Evid. 5.803(4).

## III. Discussion

Rutledge invokes the confrontation clauses of both the federal and state constitutions. Each clause guarantees an accused "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; Iowa Const. art. I, § 10. Under that guarantee, "[a] testimonial out-of-court statement made by a declarant who is unavailable to testify is inadmissible if the defendant has not had an opportunity to cross-examine the declarant." *State v. Wells*, 738 N.W.2d 214, 218 (Iowa 2007). When defendants challenge the admission of hearsay statements as violating their confrontation rights, "the State has the burden of showing that the Confrontation Clause has been satisfied." *State v. Liggins*, 978 N.W.2d 406, 418 (Iowa 2022). But even if statements are wrongly admitted, we need not reverse if the State shows that any error was harmless beyond a reasonable doubt. *Wells*, 738 N.W.2d at 218.

We skip to the harmless-error analysis. That analysis involves two steps. *State v. Kennedy*, 846 N.W.2d 517, 527 (Iowa 2014). First, we ask what evidence the jury "actually considered to reach its verdict." *Id.* Second, "we weigh the probative force of that evidence against the probative force of the erroneously admitted evidence standing alone." *Id.* at 528. On that second step, we examine whether the State's case was "so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same" without the challenged out-of-court statements. *Id.* (citation omitted). In other words, the inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered

in *this* trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993).

In this trial, the jury "actually considered" that Rutledge was the sole caregiver when O.A. was injured. Rutledge acted to preempt O.A.'s report of abuse by meeting Ashley at the door on her return home and concocting a story that the child was upset because he was being punished. Soon after O.A. said Rutledge hurt him, the mother checked her diaper-less toddler's bottom and found three tears to his anus. True, the jurors heard that O.A. told Ellwanger that Rutledge caused those injuries. But they also heard corroborative evidence. The child tested positive for chlamydia, a sexually transmitted infection. And his diaper contained seminal fluid. Most damning, Rutledge confessed that he took O.A. to his bedroom and "raped him" using his penis.[4] And that he was motivated by an inexplicable anger toward the child.

Weighing the probative force of the State's overall case against the probative force of O.A.'s out-of-court statements, we find the child's statements were of minimal importance in relation to everything else the jury considered. This case was not a whodunnit, so O.A.'s statements did not carry great weight given the overwhelming proof of Rutledge's guilt. The State established beyond a reasonable doubt that the guilty verdict was "surely unattributable" to the child's

---

[4] We reject Rutledge's argument that his confession has "weaknesses" given his memory lapses and the pressure of the interrogation. Rutledge did not challenge the voluntariness of his admissions in the district court. And the jury was entitled to credit the reliability of his confession over his initial claim of not remembering the day of the crime.

out-of-court identification of Rutledge as the person who hurt him.[5]  *See Wells*, 738

N.W.2d at 218.

      **AFFIRMED.**

---

[5] The State also contends that Rutledge did not preserve error on his state constitutional claim that the testimony of Ashley and Ellwanger violated his right to confront O.A. face to face.  On appeal, Rutledge advocates applying the rationale concerning close circuit testimony from *White*.  9 N.W.3d at 1.  We do not address the error preservation concern because, in any event, admission was harmless.  *See id.* at 14–15.